**INSURANCE MANAGEMENT OF WASHINGTON, INC., a Delaware corporation, Appellant,**

**v.**

**George W. GUTHRIE, Appellee.**

**No. 7159.**

District of Columbia Court of Appeals.

Argued Aug. 21, 1973.

Decided Oct. 2, 1973.

James T. Sharkey, Washington, D. C., for appellant.

James Brent Clarke, Jr., Washington, D. C., for appellee.

Before KERN, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

This appeal is from a judgment which denied plaintiff's (insurance company's) prayer for repayment of excess advances over the agent's (defendant's) earned commissions. The trial court found that the employment contract contained no express or implied agreement directing repayment of excess advances received by the agent. Finding no error in the trial judge's findings of fact and conclusions of law, we affirm.

During the months of August and September, 1968, John J. Matternas, president of Insurance Management of Washington, Inc. (Management) and George W. Guthrie (Guthrie) discussed the terms under which insurance agents could become associated with Management. On September 16, 1968, Management and Guthrie negotiated a contract in which Guthrie agreed in writing to spend his full working time selling insurance for Management and to turn over all commissions to it. He also agreed that, upon termination of the employment relationship, he would turn over to Management all accounts that he had produced and any renewal commissions from these accounts, and he also promised not to compete with Management for five (5) years. Management in turn promised in writing to credit fifty percent (50%) of these commissions received to Guthrie's "commission account", Management retaining the remainder. Management also orally agreed to make bi-weekly advances of $500 to Guthrie, amounting to $13,000 over a year's time. The account in which advances were debited against Guthrie was to be credited in the amount of Guthrie's share of the commissions which he turned over to Management—(50%). No mention was made, either orally or in writing, about the disposition of any excess of advances over earned commissions that might arise.

On September 26, 1968, a few days after Management made its first advance to Guthrie, it presented to him for his signature a memorandum entitled, "Statement of Account with George W. Guthrie". The last sentence of this statement read: "The above statement of account has been read and is correct in reflecting the debit of $250 due and owing as of September 27, 1968." Initially, Guthrie refused to sign this paper but, after questioning Matternas about the statement, he signed it, having been told that the balance denominated as "due and owing" was not really a debt, but merely a recorded computation for accounting purposes. Seventeen similar statements were presented to and signed by Guthrie when he received his bi-weekly advances, but Guthrie refused to sign the 19th and 20th statements presented to him. In July 1970, the employment ended by mutual consent. At that time, Guthrie had turned over $25,020 in commissions, half of which ($12,510) was to be credited to his account. He had been advanced $23,-750. Thus, $11,240 represented the excess of advances made by Management to Guthrie over the amount of commissions to be credited to his account. The suit was for this excess, claiming that Guthrie was personally liable to repay it.

Appealing from the denial of its claim, Management contends:

(1) That the words "debit" and "due and owing" contained in the statements of account are plain and unambiguous and therefore the admission of parol evidence to determine the meaning of the statements was improper;

(2) That the above language, standing alone, constituted an implied or express agreement that Guthrie owed as a debt to Management any excess of advances over commissions earned; and, in the alternative,

(3) That if the circumstances surrounding the employment relationship were examined, they would demonstrate as a matter of law the existence of an implied or expressed agreement to repay excess advances.

■ The record justifies the admission of Guthrie's testimony pertaining to the discussions with Matternas over the meaning of the words "debit" and "due and owing" as used in the statement of account. Parol evidence was properly allowed because the context in which the language was used revealed ambiguity. *See* Trans World Airlines, Inc. v. World Wide Airlines, Inc., D.C.App., 206 A.2d 821 (1965).

The original contract between Management and Guthrie did not specify any obligation of Guthrie to repay excess advances. The presentation of the first accounting statement marked the first occasion on which Guthrie was confronted with the suggestion that he might owe anything to Management. It is significant that this first mention of any "debit . . due and owing" took place separate from and following the time when the parties had negotiated the substance of their employment relationship. The accounting statement was issued with no accompanying written explanation of its purpose following the first advance to Guthrie. The very title, "Statement of Account with George W. Guthrie", was ambiguous in that it was unclear just what accounting purpose or purposes the statement was designed to fulfill—as an accounting for tax purposes, for internal corporate balance sheet purposes, as a mere record of the cash flow relationship with Guthrie, or as a record of money truly owed by Guthrie. On the basis of the contract negotiations that had transpired between Guthrie and Matternas, Guthrie had no reason to anticipate that such an accounting statement would ever be forthcoming. For the trial court to have concluded that under these circumstances the meaning of the langauge in the unexpected statement would not be crystal clear to Guthrie was not an error of law.

■ Having concluded that it was necessary to examine the circumstances surrounding the employment relationship to determine whether there was an implied or express obligation to repay, the trial court's subsequent conclusion was not erroneous. The record contains adequate evidence, such as Guthrie's testimony of his conversation with Matternas following receipt of the first statement, and the fact that Management withheld federal income taxes from the bi-weekly advances, to support the judge's conclusion. The policy considerations behind the rule adopted by a majority of the states support both the trial court's initial conclusion that the language allegedly creating a repayment obligation was ambiguous and its subsequent conclusion that the parties did not intend any such obligation.[1]

In Richmond Dry Goods Co. v. Wilson, 105 W.Va. 221, 141 S.E. 876 (1928), quoted in the trial judge's opinion in the instant case, the court characterized the nature of the employment relationship by pointing out the following:

(1) That the undertaking was a joint enterprise in which the agent did not bear the entire risk;

(2) That the advances were therefore properly regarded as speculation in this common enterprise rather than a loan;

(3) That both parties anticipated the relationship would produce a fund made up of commissions; and

(4) That since the advances were made in return for the agent's service of producing insurance in the context of the joint

---

1. The majority rule presumes that the employer cannot recover the excess of advances over commissions earned in the absence of an express or implied agreement to the contrary.

Richmond Dry Goods Co. v. Wilson, 105 W. Va. 221, 141 S.E. 876 (1928). *See also* 32 A.L.R.3d 809–811 (1970) for other cases following the majority rule.

venture, it is unreasonable to expect the agent to repay advanced capital out of his own pocket, but rather repayment should come only from the fund.

■ Cases have held that the use of words specifically describing advances as "owed" or as a "debt" will not, standing alone, overcome the presumption that repayment of excess advances is not required. Badger v. Nu-Tone Products Co., 162 Colo. 216, 425 P.2d 698 (1967); Arbaugh v. Shockney, 34 Ind.App. 268, 72 N.E. 668 (1904). Similarly, the fact that the $500 payments were labeled "advances" does not signify that they were loans rather than salary payments. Northwestern Mutual Life Insurance Co. v. Mooney, 108 N.Y. 118, 15 N.E. 303 (1888); Richmond Dry Goods Co. v. Wilson, *supra*. What this means is that words like "debit" or "due and owing", whose meaning might normally be clear and unambiguous, are necessarily suspect when used in the particular factual context of the instant case where there is a presumption against personal obligation of the agent and therefore parol evidence may be received to ascertain their meaning. In light of these facts, the trial judge's consideration of the circumstances surrounding the employment agreement was perfectly proper.

Finally, it should be noted that the appellant in its brief contended that the Restatement Rule[2] rather than the majority rule (see note 1, *supra*) should be applied in this case. As discussed earlier in this opinion, the trial judge was warranted in receiving parol evidence and examining the circumstances surrounding the employment agreement because of the ambiguity of the terms "debit" and "due and owing" in the particular context. Even under the Restatement Rule, the defendant would still prevail. That Rule requires the agent to account for anything "due" the principal. What is "due" the principal, says the Rule, depends upon the interpretation of the contract between the parties. Thus, applying the Restatement Rule to the particular facts of this case, the excess advances were simply not due to the principal, and the agent has no duty to repay them.

The trial court properly considered parol evidence concerning the employment agreement between the parties and correctly concluded that the parties to the contract did not intend Guthrie to be liable for the excess of advances he received over the commissions attributable to his account. Therefore, the judgment of the trial court is

Affirmed.

2. Restatement (Second) of Agency § 382 (1958), comment *d*, states:
   d. *After termination.* Upon the termination of the relation, the agent is under a duty to account for all he has received on behalf of the principal and to return to the principal anything which is then due to him. If an agent has received advances from his principal in anticipation of salary or commissions to which he does not subsequently become entitled, he is under a duty to repay such to the principal. Whether or not money given by a principal is given as an advance and is to be repaid by the agent in the event that his commission or other compensation does not amount to the sum advanced, is dependent upon the interpretation of the contract between them.