Ahmad H. **MAHALLATI**, et al., Appellants,

v.

Clarence E. **WILLIAMS**, et al., Appellees.

No. 83–904.

District of Columbia Court of Appeals.

Argued March 14, 1984.

Decided June 18, 1984.

---

John C. Smuck, Washington, D.C., for appellants.

Barry H. Gottfried, Washington, D.C., with whom John Perazich, Washington, D.C., was on the brief, for appellees.

Before TERRY, Associate Judge, PAIR and KERN,* Associate Judges, Retired.

---

* Judge Kern was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired, on May 25, 1984.

PAIR, Associate Judge, Retired:

This is an appeal from a judgment for $13,000, an amount represented to be the fair market value of a mink coat delivered by appellees-bailors, Clarence and Arnicia Williams, to the owners of Debonair Cleaners, appellants-bailees for cleaning and storage. On appeal, appellants contend that the trial court erred in denying both a motion for a directed verdict and a motion for a new trial. They also claim as error the trial court's failure to instruct the jury to limit appellees' recovery to $130. We affirm the denial of the motions, but because the damages awarded were improperly measured, we remand for a new trial limited to the issue of damages.

At trial there was testimony by appellee Clarence Williams that on May 14, 1980, he brought his wife's fur coat to Debonair Cleaners for cleaning and storage. The clerk told him that appellants were experienced in such matters and that the charge would be three percent of the stated value of the coat. Williams stated that the coat was worth $13,000 [1] and the clerk wrote a figure on the claim check which Williams believed at that time to be "$13,000." He also testified that the clerk informed him that the total fee for storage would be $390 (three percent of $13,000) to be paid when the coat was returned.[2] That evening Williams related the substance of his conversation with the clerk to his wife and gave her the claim check. Mrs. Williams glanced at the ticket and put it away without comment.

Massoud Mahallati, a clerk at Debonair Cleaners, testified that he received the coat from Williams, who told him the coat was worth only $130, and wrote that amount on the claim ticket and not the figure $13,000. Mahallati insisted that if the coat had been represented to have a value of $13,000, rather than $130, he would have consulted with his brother and co-owner Nasser Mahallati before accepting it.

Approximately eight months later, Arnicia Williams went to Debonair Cleaners to retrieve her coat. She presented the claim check to the clerk who, after searching the premises for the coat, told her that it could not be located. Appellees were informed that the coat had probably been stolen during a break-in.

On July 27, 1981, appellees filed a complaint against the owners of Debonair Cleaners for the value of the missing fur coat,[3] alleging a breach of the bailment agreement and demanding damages in the sum of $13,000.

Appellants moved for a partial summary judgment with respect to appellees' claim in excess of $130. They also sought to prohibit the use of parol evidence to explain the terms of the bailment contract which they argued unambiguously stated the value of the coat to be $130. The court denied the motion holding that the terms of the contract were in dispute and that it was a proper question to be submitted to the jury. At the conclusion of appellees' case and again at the conclusion of all the evidence, defense counsel moved for a directed verdict on the ground that there had been no showing of negligence or lack of due care on the part of appellants-bailees. Appellants again moved to limit, as a matter of

1. Williams had been informed by his wife that the coat was a gift from her mother who allegedly told Mrs. Williams that the purchase price of the coat was $13,000.

2. The figure "$390" does not appear anywhere upon the face of the claim check, nor does the figure "$13,000" appear upon the claim check. All that appears are the numerals "$130/00" and the words "storage" and "3%" for insurance only."

3. In their initial complaint, appellees named as defendants the current owners of Debonair Cleaners, Abdol Ejemai and Khosrow Foroutan-Sarzevari. In their answer, defendants claimed that they had not been responsible for the coat and that the previous owners were the "proper parties from whom to seek recovery." An amended complaint was filed naming Mahallati Enterprises and the previous proprietors, now appellees, as additional defendants. After hearing all the evidence, the trial court dismissed the charges against Ejemai, Foroutan-Sarzevari and Mahallati Enterprises.

law, liability to $130. Both motions were denied. The case was submitted to the jury which found that the fur coat had been lost due to the negligence of the appellants and returned a verdict of $13,000, representing the full amount of the claimed value of the lost coat. Appellants then moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial.[4] The motions were denied and this appeal followed.

**I**

Appellants now maintain that the trial court erred in denying their motion for a directed verdict because there was insufficient evidence to permit the jury to find that they were negligent. We disagree.

 The prevailing rule in the District of Columbia is that on a motion for a directed verdict the evidence must be viewed in the light most favorable to the plaintiff and be accorded the full effect of every legitimate inference therefrom. *Corley v. BP Oil Corporation,* 402 A.2d 1258, 1263 (D.C.1979). If upon the evidence, so considered, reasonable men might differ, the motion should be denied and the case should go to the jury. If, on the other hand, no reasonable man could reach a verdict in favor of the plaintiff, the motion should be granted. *Ceco Corporation v. Coleman,* 441 A.2d 940, 944 (D.C.1982); *Bauman v. Sragow,* 308 A.2d 243, 244 (D.C.1973). In reviewing the trial court's ruling, this court is limited to a determination of whether there has been an abuse of discretion by the trial court. *Taylor v. Washington Terminal Company,* 133 U.S. App.D.C. 110, 112, 409 F.2d 145, 147, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969). Great discretion, how-

ever, has traditionally been accorded to the trial court's decision because of its ability to "view the proceedings in a perspective peculiarly available to him alone." *Bennett v. D.C. Transit System, Inc.,* 111 U.S. App.D.C. 411, 413, 298 F.2d 325, 327 (1962) (quoting *Cone v. West Virginia Pulp and Paper Co.,* 330 U.S. 212, 216, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947)). Our review of the record in the case at bar indicates that the trial court did not abuse that discretion.

In support of their claim of negligence, appellees presented evidence that in December 1980 there had been two burglaries at Debonair Cleaners. Nothing appeared to have been missing as a result of the first break-in which occurred through a window at the rear of the store. Just five days later, however, a second break-in through a back door resulted in the loss of several items. Presumably, the Williams' coat was stolen in the second burglary. At trial, Nasser Mahallati testified that after the first break-in, steel bars with anchor bolts were installed inside the rear window. He admitted, however, that no major steps were taken to generally upgrade the physical security of the premises. He explained that his family was in the process of negotiating the sale of the business and did not wish to make any substantial investment to improve the premises.

 Appellants argue that this evidence was not sufficient to prove the absence of ordinary care usually required in a mutual benefit bailment contract.[5] *See Banachowski v. Saunders,* 187 A.2d 891 (D.C. 1963). The weakness in appellants' argument is that it assumes that appellees-bailors were required to prove negligence to an absolute certainty. This is simply incorrect. Where a bailor's right to recover is

---

**4.** Appellants based their motion for a new trial on several grounds including insufficient evidence of negligence, newly discovered evidence, a verdict which they asserted was "against the weight of the evidence," and "the amount of damages awarded, thirteen thousand dollars ($13,000), [was] so far excessive and against the weight of the evidence as to shock the conscience."

**5.** A "mutual benefit" bailment arises when the bailor receives a particular storage service and in return the bailee is to be paid for that service. By depositing her fur coat for cleaning and storage with Debonair Cleaners, Arnicia Williams established a mutual benefit bailment with appellants.

dependent upon a finding of the bailee's negligence, he need only introduce evidence with sufficient probative force to demonstrate a reasonable probability that the loss was caused by the defendant's negligence. *Rich v. District of Columbia,* 410 A.2d 528, 532 (D.C.1979). Our review of the evidence indicates that, contrary to appellants' assertions, it is not clear, as a matter of law, that they were not negligent. Therefore, we conclude that the trial court did not err in refusing to direct a verdict for appellants.

## II

■ Appellants' second assignment of error stems from the denial of their motion for new trial based on a claim of newly discovered evidence. To be successful on such a motion, the moving party must demonstrate that truly (1) the evidence is newly discovered, (2) could not have been discovered before trial, (3) is not merely cumulative or impeaching and (4) is such as would produce a different result at a new trial. Super.Ct.Civ.R. 60(b). We conclude that the trial court was correct in finding that appellants had not sustained this burden.

The newly discovered evidence proffered is the testimony of Jack Rogers, Arnicia Williams' stepfather, which appellants assert would establish that her testimony was false. According to Mrs. Williams' trial testimony, her mother, Agnes, re-

ceived the fur coat as a gift in 1974. She also testified that her mother and Rogers were not living together at the time she received the coat from her mother, and that they had been separated since the early 1970's. Following the close of trial, defense counsel located Jack Rogers at the home of his late wife. Rogers asserted that he and his wife had never separated and that his wife had owned the fur coat when they were first married in 1973.

■ Appellants argue that this newly discovered evidence would have established that Arnicia Williams' testimony was false, and as such, the interests of justice warranted a new trial. We disagree. At best, the proffered testimony is cumulative since the inconsistencies and uncertainties surrounding Mrs. Williams' knowledge of the origin of the coat and her mother's marital status were fully explored at trial.[6] Thus, not only was the proffered evidence cumulative, but the proffered testimony would probably not have produced a different result at a new trial.

Appellants in their brief rely upon authority from another jurisdiction to suggest that under the present set of facts a new trial is warranted. *Independent Cab Association v. LaTouche,* 197 Va. 367, 89 S.E.2d 320 (1955). In *LaTouche,* the newly discovered evidence related directly to the central issue of the case—whether the inju-

6. In his cross-examination of Mrs. Williams, defense counsel highlighted the numerous inconsistencies within her testimony—whether her mother had originally received the coat as a gift in 1974 or purchased it from a New York City department store in 1975, whether her mother was separated from or living with her stepfather when Agnes Rogers gave the fur to her daughter.

Moreover, in his closing statement to the jury, defense counsel reiterated these inconsistencies when he remarked:

Listen to Mrs. Williams' testimony in 1982, a little over a year ago in her deposition in this case, and when she was testifying in response to questions, and you heard me read this question to her yesterday.

When was it purchased?

Answer: The coat was purchased by my mother, to the best of my recollection.

The next question:

Where did she purchase the coat?

Answer: She purchased it from a department store in New York City by the name of Henri Bendel.

Question: What was the purchase price?

Answer: The purchase price was thirteen thousand dollars.

So that in 1982—1982, there was no secret admirer. Is this difference in testimony between 1982 and 1983 the sudden appearance of a secret admirer to justify a thirteen thousand dollar price tag on the coat, a secret admirer that wasn't there in 1982; is that something that a person could be—is that a little inconsistency that a person could honestly mistake about, or is that the crucial center of this case?

ries for which plaintiff was then seeking recovery were caused by the accident involving the defendant or the result of an earlier mishap. In the instant case, the newly proffered testimony would have no bearing on the critical issue—the value of the coat. The newly discovered evidence was relevant only to collateral matters, *i.e.*, whether the coat was a gift or a purchase, whether Mrs. Rogers was married or separated when she received the coat and later when she gave it to her daughter. After careful consideration of the circumstances, we are satisfied that the facts in *LaTouche* are sufficiently distinct from those involved in this appeal that it should not control its result. Thus, in no sense does the testimony of Jack Rogers present new evidence that would otherwise compel a new trial.

### III

Appellants finally assert that the trial court committed error by failing to instruct the jury to limit their potential liability to $130, the amount appearing on the face of the claim check. Appellees argued at trial and now on appeal that the placement of the numbers of the claim ticket unambiguously represented the value of the coat to be $130 and that parol evidence was improperly admitted to alter the meaning of these figures.

The claim check in the instant case is an ordinary dry cleaning receipt form filled in with handwritten notations. At the right side of the claim check is a column with the caption "amount." This column is divided by a vertical line. To the left of the vertical line, the digits "130" appear; to the right of the line is written "00." On the bottom of the ticket, the handwritten words "Storage" and "3% for insurance only" are conspicuously written. In our opinion, not only is the meaning of the figures "130/00" ambiguous, but it is also unclear whether these numbers represent the cost for the cleaning and storage of the coat, the cost of insurance, or the value of the coat itself.

When words whose meaning might ordinarily be clear and unambiguous are susceptible to a variety of interpretations, it is entirely appropriate for the trial judge to admit extrinsic evidence to aid in their construction. *See Insurance Management of Washington, Inc. v. Guthrie,* 310 A.2d 61, 63 (D.C.1973). Therefore, in the instant case parol evidence was properly admitted and the construction of the claim ticket necessarily became a question of fact for the jury to resolve. *Soldano v. Holmes,* 60 A.2d 535, 537 (D.C.1948). Therefore, in light of the ambiguity surrounding the construction of the meaning of the claim ticket, we hold that the trial court acted properly in refusing to instruct the jury to limit appellee's liability to $130.

Still another issue exists with respect to the award of damages—whether the award of $13,000 was excessive and against the weight of evidence.

In support of her claim of damages, Arnicia Williams described the missing coat as a full length, very dark Blackglama mink coat purchased from the Henri Bendel department store in New York City. This description was corroborated by the testimony of two friends who in the past had borrowed the coat and were familiar with it.

Mrs. Williams also testified that she had visited two furriers in the area to price coats of similar style and quality. Based on her own comparison and on information supplied to her by employees of the fur salons, Mrs. Williams expressed her personal opinion that the fair market value of the coat at the time of its disappearance in January 1981 was $13,000. The jury returned a verdict against appellees and awarded that exact amount—$13,000.

At the threshold, we cannot help but notice that the award directly corresponds to the original cost of the coat. Although Arnicia Williams testified that the coat was in good condition when placed in storage, we simply cannot accept appellees' contention that it is worth as much now, ten years later, as when new. The

verdict rendered was supposed to have been the value of the fur coat lost, but it actually represented its cost without regard to its age, use or depreciation. While the element of cost is a relevant and important factor in determining the coat's actual value, cost, without more, should not be the measure of damages. Apparently, then, the jury in determining the coat's actual value, did not consider all the proper elements and we cannot permit such an award to stand.

Furthermore, the sole proof of value offered by appellees was Mrs. Williams' observations and comparison shopping. On this basis alone, appellees claimed the coat was worth $13,000. We do not here dispute whether Mrs. Williams, as owner, was competent to testify as to her personal opinion of value, for that question has long been settled in this jurisdiction. *Manning v. Lamb,* 89 A.2d 882, 884 (D.C.1952). We do, however, question on the facts of this case, whether an owner's opinion of value standing alone is sufficient proof of the value of the lost fur.

■ During cross-examination, Arnicia Williams conceded that she had no bill of sale, no insurance policies and no photographs of the coat. Arguably then, her testimony was the best available evidence of the coat's value. We, however, are compelled to disagree. From the very nature of the situation, we recognize that the amount of appellees' loss in the instant case cannot be proven with exactitude. While this should not preclude a bailor from recovering damages, *Burka v. Crestview Corp.,* 321 A.2d 853, 855 (D.C.1974),

nevertheless, he must present some evidence, with such certainty as the nature of the particular case may permit, to lay a foundation which will enable the trier of fact to make a reasonable estimate of damages. *Romer v. District of Columbia,* 449 A.2d 1097, 1100 (D.C.1982).

■ In the instant case, appellees made no effort to establish the value of the coat through in-court testimony of the furriers who allegedly aided Mrs. Williams in her evaluation or through others who might have observed the coat before the bailment and were qualified to estimate the value of the coat. There was no independent corroborative evidence offered by appellees to prove the actual value of the coat at the time of its loss. Where, as here, a special expertise is required to estimate the value of the article lost or destroyed, the testimony respecting the owner's opinion, without more, does not provide an adequate basis for a reasonable estimate of value. *See Yonan Rug Service v. United States Automobile Association,* 69 A.2d 62 (D.C.1949).[7] In short, we conclude that the jury did not have sufficient evidence before it to make a reasonable determination on the issue of the amount of damages to be awarded. Accordingly, we must remand for a new trial. But because the lower court fairly determined the question of liability and because the issues of liability and damages are separate, our remand for a new trial is limited solely to the issue of damages.

The case is therefore remanded for proceedings consistent with this opinion.

*Reversed.*

---

7. In *Yonan,* the only evidence of value of an Oriental rug was hearsay evidence of the bailor-owner. The court held that there was insufficient evidence of value and remanded for new trial. *See also Hartford Accident and Indemnity Co. v. Dickomey Manufacturing Jewelers, Inc.,* 409 A.2d 1076 (D.C.1979) (where the court held that testimony of the bailor-owner of a diamond ring and four experts was sufficient evidence of the value of the lost ring). *Hotel Corp. of America v. Travelers Indemnity Company,* 229 A.2d 158 (D.C.1967) (sufficient evidence of the value of a fur coat was established by the testimony of the bailor-owner and a furrier).

Where ordinary goods were lost, in a mutual bailment benefit, the owner's personal estimate of value alone provided sufficient evidence of value. *See Bewley v. Allright Car Park, Inc.,* 617 S.W.2d 547 (Mo.App.1981) (where the bailor-owners themselves testified as to the value of clothing and personal effects stolen from their car, it was held to be sufficient evidence of the value of the lost goods); *Duka v. Hotel Associates, Inc.,* 23 Conn.Sup. 500, 185 A.2d 86 (1962) (where the testimony of value provided by the bailor-owner was a sufficient basis from which the jury could determine the value of lost books and clothing).