**In re ESTATE of Ethel D. STARR.**

**Appeal of Joyce H. SARGENT.**

**No. 80–1144.**

District of Columbia Court of Appeals.

Argued March 19, 1981.

Decided Feb. 5, 1982.

Robert B. Norris, Washington, D. C., for appellant.

J. Roy Thompson, Jr., Washington, D. C., for appellee.

Before KELLY, KERN and HARRIS, Associate Judges.

KERN, Associate Judge:

This appeal is from the trial court's denial of a motion to amend an order ratifying the sale of realty by the executor of the estate of Ethel D. Starr and from the trial court's denial of a motion for reconsideration or for clarification. We conclude that the trial court's stated grounds for refusing amendment of this order are invalid. Accordingly, we reverse. However, we remand the case to the trial court for a factual finding necessary for a determination of whether the amendment of the order of sale sought by the appellant is appropriate under the particular circumstances.

Appellant is a real estate broker who procured a contract of sale for the decedent's property at 4414 Greenwich Parkway, N.W., to Kelly C. and Linda W. Sandy, for $120,000, subject to a broker's commission of six percent. The executor accepted the contract on behalf of the estate,[1] subject to court approval by order *nisi*. Following notice and publication, the court held the order *nisi* proceedings on January 23, 1979, to consider higher bids for the property. The initial bid was required to be ten percent in excess of the estate's net gain from the original contract offer.

Both before and at the *nisi* proceedings, appellant was advised, first by counsel for the executor and then by her own attorney, that if there were any higher bids over the original purchase contract, she would *not* be entitled to the commission—even if the ultimately successful bidders were the Sandys. Believing this to be the standard court practice and knowing that a higher bid would be made, appellant, at the beginning of the proceedings, agreed to waive the brokerage fee in order to raise the net amount accru-

---

1. In its "Petition to Ratify Executor's Sale of Realty," the executor stated that he considered the offer of the Sandys to be "a fair and advantageous and reasonable price for the sale" of the property.

ing to the estate under that offer. Almost immediately after counsel for appellant informed the court of waiver, he presented an argument to the court of the inequities of appellant, the real estate broker, losing her commission in this proceeding. The court, however, refused to entertain this argument.

The court at this proceeding first agreed that appellant's waiver raised the net basis for bidding to $120,000. However, after counsel for the only bidder other than the Sandys and counsel for the estate took the position that the net basis for bids should be equivalent to the estate's net gain under the original contract offer, as published, the court then ruled that equity favored bids ten percent over the published offer less the six percent commission. The bidding, therefore, commenced at $124,800, representing a ten percent increase over the $112,800 advertised net price. The Sandys met and raised each bid till they ultimately prevailed with the highest offer of $129,000.

Appellant's counsel attempted at this hearing to make a *quantum meruit* claim on behalf of appellant for her efforts in procuring the original contract. The court declined to rule on this contention because it deemed the matter not properly before it. On January 26, 1979, the court entered an "Order Finally Ratifying Sale of Realty by Executor," providing for the sale of the property to the Sandys for $129,000 "all cash and not subject to any broker's commission."

On March 28, 1980, appellant, by new and different counsel who now represents her

on appeal, filed pursuant to Super.Ct.Civ.R. 60(b)(6), a motion to amend the January 26 order to reflect her entitlement to a six percent broker's commission. Appellant and the attorney who had represented her at the *nisi* proceeding filed affidavits accompanying the motion, stating that they were only recently informed of the Superior Court practice, acknowledged by the Register of Wills, of allowing commissions to the procuring real estate broker following order *nisi* proceedings where the ultimately successful bidder was the original contract purchaser. Appellant claimed that she would not have waived her commission at the *nisi* proceedings concerning the sale of decedent's house had she known of this practice; and, she asserted that the waiver was based on a desire to aid the Sandys in securing the property.[2]

On June 23, 1980, the court denied appellant's motion to amend on five grounds. First, the judge ruled that the motion was untimely; second, that the practice of allowing an estate to pay a commission applies only when there has been no waiver and that appellant's motion sought relief which would reduce the assets of the estate and thus defeat the purpose of the *nisi* process; third, that the relief would have the effect of defrauding those who had participated in the bidding; fourth, that appellant's claim of lack of intelligent waiver as a basis for amending the order would require an adversary proceeding for proper resolution; and fifth, that the movant had no standing because she was not a party in interest. Appellant's motion for a reconsid-

---

2. Appellant stated in her affidavit of March 28, 1980, that

> [h]ad I understood that the bidding would start at a base price of $112,800.00 ($120,-000.00 less commission of $7,200.00), then I would not have agreed to waive my commission because a waiver in those circumstances would not have benefited either the Sandys or me.

Counsel for appellant and the Sandys at the *nisi* proceeding stated in his affidavit:

> I was contacted by [appellant] who informed me that ... [the] attorney for the Executor in this Estate, had advised her that he believed there would be higher bids made at the hearing ... and that any higher bids would auto-

matically result in the loss of her commission on the original contract, whether or not the Sandys were the ultimately successful bidders at the hearing.... I made a diligent search of the law in the District of Columbia to ascertain the correctness and validity of that position. Notwithstanding my efforts in this regard, I could find no statutory or decisional law on this narrow point. Therefore, despite the obvious inequities, I reluctantly concluded that if there were any higher bids made at the hearing, whether or not the Sandys were the ultimately successful bidders, [appellant] would lose her commission on the original contract price.

eration or clarification of the order was denied.

## I.

■ Initially, it is appropriate to address the issue of standing. Super.Ct.Civ.R. 60 states that a court may grant relief to "a party or his legal representative from a final judgment, order or proceeding." Because of the special nature of probate proceedings, we are of the opinion that appellant is a party who may seek the relief provided by Rule 60. The *nisi* hearing, the subject of which is the sale of property, directly involves a variety of parties, unlike the usual adversary proceeding. Here, appellant was involved in the proceeding from its initiation. The contract which she procured on behalf of the estate instigated the proceeding. Appellant was present and was represented by counsel at the hearing, which was a part of such proceeding. Furthermore, appellant, as negotiating agent of the sales contract which provided for a broker's commission, had a right which she may seek to enforce.[3]

The executor's reliance on *Bulloch v. Fisher*, 58 App.D.C. 165, 26 F.2d 537 (1928), is misplaced. In *Bulloch* which involved a receiver's sale of realty, the real estate broker procured a contract for the property from a prospective purchaser, but the court approved an offer from *another* purchaser. Here, appellant procured the original contract purchasers who were ultimately the successful bidders and hence the purchasers; therefore, unlike the real estate broker in *Bulloch*, appellant here has standing to assert a claim to a commission.

## II.

■ Appellant contends that she is entitled under Rule 60(b)(6) to relief from the court's order in the form of amendment. Rule 60(b) provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken....

Because it is possible to conclude that this case is the unusual situation to which Rule 60(b)(6) is applicable, we must remand this case for a determination by the court of certain matters.

The record reflects that appellant waived her right to a commission on the contract price only because she was led to believe by the lawyers in the *nisi* proceeding that the presence of a bidder there who was willing to bid higher than the initial bid precluded her from receiving her commission even if the purchasers she obtained were ultimately successful in their bid. It is clear from the record that appellant would not have waived the commission had she known that the practice of the probate court was to allow a commission where the buyer located by that broker is the ultimate purchaser. What is not clear from the record is whether this practice in fact exists and how well-known the practice is.

The only evidence of the particular practice in the record other than the statements of appellant and her counsel[4] is several

---

**3.** The trial court's only stated basis for finding lack of standing was that appellant was not a "party in interest." It is apparent from the record that it was appellant, as real estate broker, rather than the firm by whom she was employed, who may have been entitled to the six percent commission. Under Super.Ct. Civ.R. 17(a) it is appellant who "has the right sought to be enforced." Moreover, if the basis for the trial court's finding of lack of standing was that appellant's firm was the real party in

interest, this would not warrant dismissal without the court affording a reasonable opportunity to substitute or to join the corporate broker as a party-movant. Super.Ct.Civ.R. 17(a).

**4.** Appellant and her counsel both state that the "Register of Wills for the District of Columbia takes the position that when the contract purchaser and the ultimately successful bidder at an order *nisi* hearing are one and the same, the practice of this court is to allow a real estate

statements by the trial judge in her order denying appellant's motion to amend the *nisi* order. The trial judge first refers to "an alleged 'equitable practice' of allowing an estate to pay commission when the original offeror is the successful final bidder," thus seeming to cast doubt on the existence of such a practice. The court appears to acknowledge the existence of the practice, however, as it proceeds to explain in its opinion that the practice *applies* only where there has been no waiver.

The court's references to the practice are contained in the following reason for denial listed in the June 23 order:

> The motion, although labelled innocuously as one seeking "amendment" of an order, actually seeks recovery of a sum of money which would reduce the assets of the estate. The basis upon which it addresses this is one that urges the Court to "reaffirm" *an alleged "equitable practice"* of allowing an estate to pay commission when the original offeror is the successful final bidder. *That practice applies* when there has been no waiver of broker's commission. To apply it when there has been a waiver of commission triggers insurmountable entanglements of computation into the question of whether the final offer made in open court in the presence of competing bidders in fact is the highest offer net-to-the-estate, and the purpose of the nisi process would be defeated.

> Furthermore *when it is applied*, the practice involves entry into a new contract whereby the estate becomes contract obligor for that amount of commission that is attributable to the original offer. In such a case, there having been no waiver, there is no reduction of what, during the sale, was accepted as the highest offer net-to-the-estate, and no one's interests are affected adversely thereby. [Emphasis supplied.]

It is impossible to determine from this discussion by the trial court whether a court practice of allowing a commission actually exists, and if so, what guidelines govern the broker's commission to the procuring agent on practice. In light of this ambiguous language, we cannot, without a further delineation by the court of this practice, assess whether the court abused its discretion in denying appellant's motion under Rule 60(b). Because we conclude further factual findings are necessary to enable a proper resolution of this case, we set forth our analysis of Rule 60 under each of the alternatives which the trial court might find.

■ If the court finds upon remand that the practice as stated by appellant and counsel does not in fact exist, then appellant has no basis for relief from the *nisi* order. Under these circumstances, the trial court did not abuse its discretion in denying her motion.

On the other hand, if the trial court finds that the practice exists, that it is well-known as a standard court practice, and that it is knowable by attorneys practicing before that court, then appellant's motion falls into the rubric of a Rule 60(b)(1) request for relief because appellant's ignorance of the practice amounts to mistake. Under these circumstances the motion for relief properly was denied on the basis of untimeliness, as appellant did not file her motion until over a year after the order was entered. Moreover, her attorney's failure to ascertain adequately the applicable court procedures and to so advise appellant is not excusable neglect and may not be the type of mistake warranting relief from the order. *See Citizens Building & Loan Ass'n of Montgomery County v. Shepard*, D.C.App., 289 A.2d 620, 622 (1972); *Railway Express Agency, Inc. v. Hill*, D.C.App., 250 A.2d 923, 926 (1969). If these facts are brought out on remand, we could not say that the trial court abused its discretion in denying the order.

However, if this probate court procedure does exist but is so obscure that appellant's attorney reasonably could not have ascertained its existence, then appellant's motion comes within the context of Rule 60(b)(6). If the practice of affording a commission to the procuring broker is found to the contract price."

be an obscure one, then the events surrounding appellant's loss of commission fall within those unusual and extraordinary situations to which the application of subsection (b)(6) is restricted. *See generally Ohio Valley Construction Co., Inc. v. Dew*, D.C. App., 354 A.2d 518 (1976). Under these circumstances, appellant's waiver of the commission could not have been a *knowing* waiver because she did not know and could not have ascertained that a practice existed which would have allowed her to receive her commission. Moreover, the record of the *nisi* hearing indicates that the trial judge was put on notice as to appellant's lack of a *knowing* waiver. Her counsel called the inequity of her loss of the commission to the probate court's attention almost immediately after she had made the waiver, but the court ruled "out of order" any discussion of this loss of a commission.

It was apparent to the court that appellant waived the commission only in order to increase the base price for bidding; *yet the court started the bidding as if a commission was to be paid and continued to refuse to entertain arguments regarding any inequity to appellant.* In its order denying amendment, the court indicated that the practice of allowing commissions applies only where there has been no waiver. To deny the amendment on that basis, however, would constitute an abuse of discretion if the practice is found to exist and if, as here, the trial court had ample opportunity to correct any misinformation regarding court procedure.

The unique facts of this situation also lead us to conclude that the lapse of fourteen months between the order and the motion was not an unreasonable amount of time within the meaning of Rule 60(b)(6). The record reflects that thirteen months elapsed before appellant's discovery of the practice of paying commissions to the procuring broker and this discovery afforded her a legal basis for a motion to amend. We recognize that Rule 60 evinces a policy of buttressing the finality of judgments and that the application of subsection (b)(6), which is not limited by a specific time period, has therefore been restricted to unusual

and extraordinary situations. *See Railway Express Agency, Inc. v. Hill, supra* at 925. Considerations of finality are outweighed in this situation by the unusual inequitable result to appellant. Thus, we conclude that, if the court practice of allowing commissions exists and was not reasonably ascertainable by counsel, the court abused its discretion in denying the motion to amend under Rule 60(b)(6) as untimely.

We turn now to the court's reasoning that allowing appellant to receive a commission would reduce the current assets of the estate. We note that the *nisi* proceeding would not have taken place had it not been for the work of appellant, who procured the sales contract. A court practice allowing commissions where the contract purchaser is the successful bidder necessarily reduces the potential assets of the estate by the commission amount. Such a practice is favored by public policy, however, as it supplies an incentive to brokers to sell houses of decedents. If that practice exists, then denying application here would result in unjust enrichment to the estate. The appellant's *unknowing* waiver should not bar her from recovery.

### III.

The trial court noted two additional grounds for denying amendment of its order. We find each of these grounds insufficient to defeat appellant's claim, provided that the proceedings on remand reveal that appellant otherwise is entitled to relief under Rule 60(b)(6).

The court stated that amendment of the order would "constitute a fraud practice upon the public, and specifically that segment thereof present in court and bidding." Allowing appellant a commission on the contract which she procured would not so affect the rights or expectations of any persons to such a degree as to constitute a fraud. The public was informed through published notices of the six percent commission on the original sales contract. Despite the "waiver" of commission, the new bidder at the proceeding was allowed to place the

bid that she had planned in reliance on this publication. In addition, we cannot find the application of a court procedure allowing a commission to be a fraud upon the estate, which, prior to the *nisi* proceeding, agreed to a six percent commission and stated that the contract price subject to that commission was fair.[5]

The court further reasoned that denial of the motion for amendment of the *nisi* order was justified because an adversary proceeding would be required in order to assess appellant's claim of lack of intelligent waiver and to allow the estate to raise defenses. We are persuaded that the record contains uncontroverted evidence of appellant's lack of a knowing, intelligent waiver. A waiver must be a voluntary relinquishment of a known right. *Gibson v. District of Columbia*, D.C.App., 221 A.2d 715, 717 (1966). Appellant clearly did not know of a court procedure allowing her to maintain her commission and it remains now only to be ascertained upon remand whether this procedure existed.

With respect to the trial court's concern regarding the estate's right to raise defenses, we conclude that the estate had the opportunity to, and did in fact, raise legal defenses to an amendment of the *nisi* order during the trial court proceedings on the Rule 60(b) motion for relief. The executor argued that relief should be denied appellant on the basis of laches, estoppel, and the general inappropriateness of equitable action by the court. In support of each defense, the executor asserted facts and argued its interpretation of the applicable law. Further factual findings are not necessary to assess the applicability of these defenses. The defenses of laches and estoppel are precluded due to our conclusion that appellant's waiver of commission was unknowing. Because appellant acted promptly upon her discovery of a court practice that allowed her to receive a commission, her delay was reasonable[6] and she cannot be estopped from asserting her claim.[7] Furthermore, we have concluded that appellant may be entitled to the equitable relief authorized by Rule 60(b)(6). Thus, none of the defenses raised merit denial of the amendment unless on remand the alleged court procedure is found to be nonexistent or readily ascertainable.

Accordingly we reverse the trial court's decision and remand for further proceedings consistent with this opinion.

*So ordered.*

KELLY, Associate Judge, dissenting:

I disagree that this case presents the unusual situation where Rule 60(b)(6) is applicable. In my view, appellant's motion to amend was a Rule 60(b)(1) motion and was properly denied as untimely.

Superior Court Civil Rule 60(b) provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from

5. We note that, if appellant is entitled to relief, the amount to which she is entitled is six percent of the *original* contract price.

6. Specifically, in order to establish the defense of laches, the evidence must show that the delay was unreasonable and that it prejudiced the party asserting the defense. *Powell v. Zuckert*, 125 U.S.App.D.C. 55, 57, 366 F.2d 634, 636 (1966). Finding appellant's delay in moving for relief from the *nisi* order reasonable, we need not examine the prejudice to the estate. We note, however, that the only difficulty that the delay caused the estate, *viz.*, the need to amend various tax returns and accounts, is not significant when it is considered in light of the

prejudice to appellant arising from a denial of the order's amendment.

7. Under the principle of estoppel, a party who knows or should know the truth is absolutely precluded from asserting the contrary of his earlier position. *See* 28 Am.Jur.2d, Estoppel and Waiver, § 27, pp. 627–28. If the court finds upon remand that the court practice existed and was not reasonably ascertainable by counsel, then appellant is not precluded from now claiming a right to a commission because it cannot be said that she knew or should have known the true court practice. Thus, the defense of estoppel must fail.

the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . .

As explained in *Railway Express Agency, Inc. v. Hill*, D.C.App., 250 A.2d 923, 925 (1969), "[t]he dominant purpose of this rule is to 'buttress the finality of judgments' by providing a definite time limit within which to attack final judgments." Thus the application of subsection (b)(6), which is not limited by time, has been restricted to unusual and extraordinary situations. *Id.* Moreover, subsections (b)(1) and (b)(6) are mutually exclusive. *Clark v. Moler*, D.C.App., 418 A.2d 1039, 1041 (1980).

Appellant's and her counsel's ignorance of the alleged practice according to which appellant could have received a broker's commission cannot be characterized as unusual and extraordinary; it amounts at most to mistake and excusable neglect. Appellant's motion, therefore, must be considered a Rule 60(b)(1) request for relief. In *Day v. United Securities Corp.*, D.C.App., 272 A.2d 448, 451 (1970), we rejected a claim that appellants' impecunious circumstances and ignorance of available legal resources gave rise to the exceptional or extraordinary situation contemplated by subsection (b)(6). Similarly here, appellant's unfamiliarity with a local court practice which she might have relied upon in urging the court to allow the estate to pay her a broker's commission, is not a circumstance compelling relief under the catch-all provision of subsection (b)(6).

In *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the Supreme Court held that the failure to appeal from a judgment of denaturalization because of improper legal advice, did not justify relief under Rule 60(b)(6) of the Fed.R.Civ.P., and that since appellant's failure to appeal was excusable, relief could only be had under Rule 60(b)(1). However, the petitioner's motion under that subsection was foreclosed as untimely. In distinguishing *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, *modified on other grounds*, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949), where the Court had found that petitioner's illness, poverty and imprisonment were extraordinary circumstances justifying relief pursuant to Rule 60(b)(6) from a denaturalization judgment entered by default, the *Ackermann* opinion found no such extraordinary circumstances excusing the decision not to appeal by the petitioner in that case. Specifically, the Court explained that "[t]he comparison strikingly points up the difference between no choice and choice, imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence." *Id.* 340 U.S. at 202, 71 S.Ct. at 213. In the present case, as in *Ackermann*, appellant had her day in court, was represented by counsel, and was free to act in what she perceived as her own best interests.

*Ackermann's* policy that "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from," *id.* at 198, 71 S.Ct. at 211, was furthered by the Second Circuit in a case upholding the trial court's refusal to vacate a default judgment. *United States v. Erdoss*, 440 F.2d 1221 (2d Cir.), *cert. denied sub nom. Horvath v. United States*, 404 U.S. 849, 92 S.Ct. 83, 30 L.Ed.2d 88 (1971). In *Erdoss*, the decision made by a junior member of the law firm representing appellants proved to be based on a mistaken assumption of law. The motion for relief was denied under Rule 60(b)(1) for the reason that "when a conscious decision has been made by counsel, ignorance of the law 'is not the sort of excusable neglect contemplated by . . . Rule 60(b).'" *Id.* at 1223 (quoting *Ohliger v. United States*, 308 F.2d 667 (2d Cir. 1962)). Nor could appellants obtain relief under subsection (b)(6) which was held inapplicable since the alleged grounds for relief concerned mistake.

In this case, appellant was bound by her lawyer's representations and legal tactics. The "acts and omissions of counsel are imputed to the client even though detrimental to [him] . . . [unless] the conduct of counsel

is outrageously in violation of either his express instructions or his implicit duty to devote reasonable efforts in representing his client." *Railway Express Agency, Inc. v. Hill, supra* at 926 (citations omitted). To the extent that counsel misunderstood the practice of the Superior Court or was neglectful in discovering it, his conduct was neither so extraordinary nor so outrageously in violation of his duties that it should not be imputed to appellant. *Compare Citizens Building & Loan Ass'n of Montgomery County v. Shepard*, D.C.App., 289 A.2d 620, 622 (1972) (Rule 60(b)(6) applied to relieve appellees of attorneys' actions which were found "patently erroneous," "curbstone, uninformed advice reach[ing] the level, almost, of absurdity"); *L. P. Steuart, Inc. v. Matthews*, 117 U.S.App.D.C. 279, 329 F.2d 234, *cert. denied*, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964) (Rule 60(b)(6) relief applicable where counsel's neglect was not excusable, but grossly negligent).

Additionally, none of the other arguments advanced by appellant provide compelling equitable reasons to grant her relief under subsection (b)(6). I do not accept the majority's position that a practice of allowing commissions to brokers is favored by public policy. On the contrary, as noted by the trial court, the relief sought by appellant would defeat the purpose of the *nisi* process which is to assure the maximum sale price to the estate. Appellant seeks now to deplete the estate by an amount equivalent to six percent of the sale price of the subject property. This would not only reduce the net return to the estate from the sale, but would also mean that the true nature of the Sandys' offer was not correctly reflected to the public present at the

order *nisi* hearing. Had appellant not waived her commission, the Sandys' $129,-000 bid would not have been the highest bid since the amount recovered by the estate would only have been $121,800, and the next highest bidder (who bid $128,500) would have been the ultimate purchaser.[1]

Moreover, there is no firm evidence of record that the practice which appellant cites would have entitled her to a broker's commission or that it was anything other than a permissive rule. The fact that appellant's waiver was uninformed would not be significant since she had no enforceable right to the commission. Thus even if the alleged unwritten practice had been brought to Judge Haywood's attention at the *nisi* proceeding, there is no assurance that she would have allowed the estate to award a brokerage commission in this case, or that the estate would have elected to do so, if allowed. Therefore, I conclude that appellant's motion was a Rule 60(b)(1) motion and, having been filed more than one year after the order it sought to amend was entered, was correctly denied by the trial court as untimely.

Even if I could accept the majority's conclusion that there exist in this case the extraordinary circumstances required to support the application of Rule 60(b)(6), thus rendering appellant's motion timely because presumably filed within a reasonable time, I would still uphold the trial court's denial of appellant's motion to amend. Since "[t]he decision to grant or deny a motion under Rule 60(b)(6) is committed to the sound discretion of the trial court judge," *Ohio Valley Construction Co., Inc. v. Dew*, D.C.App., 354 A.2d 518, 521 (1976),[2] our review of such motions is corre-

1. When counsel announced to the court before the start of the bidding that appellant wished to waive her commission, other prospective bidders protested that such an action was a change in the advertised terms of sale. Counsel insisted that it was appellant's right to waive her commission. To allow appellant to receive a commission now would, as the trial court correctly determined, constitute fraud.

2. Appellant's reliance on *Ohio Valley, supra*, is misplaced, even if we consider her motion under subsection (b)(6). In that case, we upheld

the trial court's discretion in granting a motion to vacate pursuant to Rule 60(b)(6) where, following a multi-vehicle accident, appellee's insurer had brought a property damage suit without appellee's authorization and obtained a judgment which would have been *res judicata* of appellee's personal injury action against the same defendants. Unlike the present case, in *Ohio Valley*, the trial court found that the case warranted extraordinary relief and exercised its discretion to grant that relief. Also, the action

spondingly limited. The order of January 26, 1979, was supported by reasonable and just equitable considerations. Therefore, to deny appellant the ability to reduce the assets of the estate on the basis of a practice, the nature and existence of which are unclear, would be well within the sphere of the trial court's discretion under Rule 60(b)(6). I respectfully dissent.

taken on behalf of the appellee in *Ohio Valley* was unauthorized, whereas the representations made to the court on behalf of appellant in this case had her express approval.