Raymond LAUNAY, et al., Appellants,

v.

LAUNAY, INC., et al., Appellees.

No. 83–1345.

District of Columbia Court of Appeals.

Argued Sept. 12, 1984.

Decided Aug. 23, 1985.

Eugene Mittelman, Washington, D.C., with whom Stanley R. Jacobs, Bethesda, Md., was on briefs, for appellants.

Harvey A. Levin, Washington, D.C., for appellees.

Before BELSON and TERRY, Associate Judges, and PAIR, Associate Judge, Retired.

BELSON, Associate Judge:

This litigation arose out of the breakdown of the efforts of certain members of two families, the Launays and the Arpads, to collaborate in the business of repairing and selling antiques. The principal dispute was over the ownership of corporate shares formerly owned by a deceased founder, Michael Arpad. The already complicated dispute became more entangled because of lapses in pleading and practice. Unsuccessful as plaintiffs, the Launays now appeal (1) the dismissal of Count I of their original complaint, the count in which they sought enforcement of a buy-sell agreement, (2) the award of counsel fees to the Arpads imposed upon the dismissal of all counts of the original complaint except Count V, seeking accounting and partition of real property, (3) the dismissal with prejudice of their amended complaint, including a shareholders' derivative count, a count in defamation, and also the count in accounting and partition that had survived the first motion to dismiss, and (4) the refusal of the trial court to vacate the dismissal of the amended complaint. We reverse both the dismissal of original Count I (enforcement of the buy-sell agreement) and the award of attorneys' fees. We affirm the dismissal of the derivative and defamation counts of the amended complaint, but reverse the dismissal of the count seeking accounting and partition.

## I

A brief recitation of the tangled procedural history of the case is necessary. The plaintiffs in this civil action were Raymond Launay and Daniele Launay, husband and wife (the Launays). The defendants were the estate of Michael Arpad, Vivian Arpad (the widow of Michael Arpad), and Sheldon Arpad (the son of Michael and Vivian) (the Arpads) and also Launay, Inc., a District of Columbia corporation.

The Launays sought in their original complaint: specific enforcement of a buy-sell agreement concerning shares of Launay, Inc. (Count I); damages for breach of an agreement to operate jointly Launay, Inc. (Count II); liquidation of Launay, Inc. (Count III); damages for defamation (Count IV); and an accounting and partition of real property (Count V). The Arpads moved to dismiss the original complaint, asserting that none of its five counts stated a cause upon which relief could be granted. They stated the following additional grounds for dismissal of certain counts: Count I was barred by the statute of limitations; Counts II and III were miscast since they sought damages for the Launays rather than for the corporation and Count IV failed to set forth with the required specificity the claim that Sheldon Arpad impugned the business reputation of Mr. Launay.

The Arpads also contended that all claims against the estate of Michael Arpad were barred by noncompliance with probate presentation requirements. D.C.Code §§ 20–102, –901 to –905 (1981).

After a hearing, Judge Norman dismissed with prejudice the demand for specific performance of the buy-sell agreement, Count I; dismissed, with plaintiffs' consent, Counts II, III, and IV, with leave to amend; and denied the motion to dismiss Count V. Attorneys' fees and costs were awarded to the Arpads in the amount of $1,153.

The Launays thereafter filed an amended complaint consisting of three counts: Count I, a derivative action (a restatement of Counts II and III of the original complaint); Count II, a defamation action; and Count III, the accounting and partition claim which had been Count V of the original complaint and had survived the first motion to dismiss. The Arpads moved to dismiss the amended complaint. They argued that Count I did not meet the pleading requirements for shareholder derivative actions, Super.Ct.Civ.R. 23.1, in that the complaint failed to state that the action was not collusive, and the complaint was not verified. They asserted that the defamation charge still lacked the requisite specificity. Finally, they argued, there was no basis in fact for the accounting and partition sought in Count III of the amended complaint.

Along with their amended complaint, the Launays filed a motion to reconsider and vacate the order dismissing the specific performance count and awarding attorneys' fees, and requested a hearing on the motion. The Arpads opposed this motion also. Because Judge Norman had retired, the Launays' motion to reconsider was referred to another judge. The motion for reconsideration was initially set for hearing on September 15, 1983, but was continued by consent to September 30, 1983.

On October 12, 1983, Judge Goodrich dismissed with prejudice the Launays' amended complaint. The order noted the Launays' lack of opposition to the motion to dismiss. The Launays moved for relief from the dismissal under Super.Ct.Civ.R. 60(b), on October 24, 1983. The Arpads opposed. On November 4, 1983, Judge Wolf refused to vacate the dismissal. At the hearing on the motion, the Launays were permitted to place in the record a proposed second amended complaint correcting the pleading defects of the derivative action. They also proffered, but did not make a part of the record, an opposition to the Arpads' motion to dismiss the first amended complaint. This timely appeal is taken from Judge Wolf's denial of relief from the order of dismissal, Judge Goodrich's dismissal of the amended com-

plaint, and Judge Norman's dismissal of Count I of the original complaint and award of attorneys' fees.

## II

We turn first to appellant's challenge to Judge Norman's dismissal of the original complaint's first count, which called for specific performance of the buy-sell agreement. We summarize here the allegations of that count. Raymond Launay and Michael Arpad formed Launay, Inc., in 1962 to carry on the business of repairing and selling antiques. One hundred shares of capital stock of Launay, Inc. were authorized. The corporation issued 54 shares to Michael and Vivian Arpad as tenants by the entirety, and 46 shares to Raymond and Daniele Launay. On the day the stock was issued, Raymond Launay and Michael Arpad agreed that the stock would be issued to each of them individually so that the survivor could purchase the stock of the other upon his death. The corporate by-laws and minutes described the buy-sell agreement, but the stock certificates and ledger did not refer to the restriction. Raymond Launay and Michael Arpad operated Launay, Inc. for 20 years with the understanding that the stock had been issued solely to each and, upon the death of the other, would be subject to purchase by the survivor. When Michael Arpad died, Raymond Launay notified Vivian Arpad of his election to purchase Michael Arpad's stock at book value, but Vivian Arpad asserted that she had owned the stock jointly with her husband. Based on these allegations, the Launays asked the court to direct the sale of the contested 54 shares to Raymond Launay.

The Arpads moved to dismiss Count I contending that it failed to state a claim upon which relief could be granted because, by operation of law, Vivian Arpad, a tenant by the entirety, had succeeded to the full and complete ownership of the 54 shares. Michael Arpad, they argued, could not have unilaterally defeated Vivian Arpad's right of survivorship even if, as the Launays asserted, he had agreed to the buy-sell agreement.

■ The Arpads' motion to dismiss Count I was to be treated as a motion for summary judgment because it referred to an affidavit and certain documents.[1] The court will grant a motion for summary judgment if the pleadings and affidavits show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c).[2]

Raymond Launay's affidavit set forth that it had been his understanding that Vivian Arpad was bound by the buy-sell agreement, irrespective of the manner in which the stock was issued. He averred that Michael Arpad agreed to the buy-sell agreement, and that Vivian Arpad signed the agreement as a temporary acceptance on behalf of Michael Arpad, promising to obtain Michael Arpad's signature later.

The facts presented to the court permit different conclusions. On the one hand, the stock certificate issued to the Arpads and the stock ledger page show that the stock was issued in tenancy by the entirety to Michael and Vivian Arpad. If that were so, Vivian Arpad, rather than Raymond Launay, would become the sole owner of those shares of stock if she survived her husband. On the other hand, the minutes of the first stockholders' meeting of Launay, Inc. (attended by Michael and Vivian

1. Super.Ct.Civ.R. 12(b); *see, e.g. American Insurance Co. v. Smith,* 472 A.2d 872, 874 (D.C.1984).

2. The Arpads contend that because the Launays did not file a supporting affidavit until the day of the hearing, that affidavit was not properly before the court under Super.Ct.Civ.R. 56(c) ("adverse party prior to the day of hearing may serve opposing affidavits"). Since the Arpads did not object to the use of the affidavit at the hearing on Rule 56(c) grounds, we will assume for purposes of review that it was properly before the trial court. *Cf. Gillespie v. Washington,* 395 A.2d 18, 21 (D.C.1978) (appellant's failure to raise issue before trial court grant of summary judgment generally waives right to raise issue on appeal).

Arpad and Raymond Launay) describe the buy-sell agreement as an amendment to the bylaws.[3] In pertinent part, the agreement provides that "the surviving stockholder has the option to purchase the stock of the deceased." The minutes stated that a signed certificate would represent the buy-sell agreement. That certificate incorporated the buy-sell agreement described in the minutes and, according to its terms, was to be signed by "all the stockholders of Launay, Inc." This stock restriction agreement contained two lines for signatures. The initials "MA" appear in the margin next to the first line, and the initials "RL" appear in the margin next to the second line. Vivian Arpad signed above the first line, and Raymond Launay signed on the second line. The minutes of the first stockholders' meeting also listed the names of the stockholders and the corresponding number of shares as "Michael Arpad—54" and "Raymond Launay—46."

We hold that two material factual issues are posed by the pleadings and other papers: (1) Who were the parties to the stock restriction agreement?; (2) What was the intent of the parties regarding the application of the agreement on the death of Michael Arpad? *See American Insurance Co. v. Smith,* 472 A.2d at 874–75 (whether signature on contract was as agent or in individual capacity and whether identity of principal was disclosed are questions of fact).

We agree with the Arpads that Michael Arpad unilaterally could not have severed Vivian Arpad's interest in a tenancy in the entirety. But that is not what the Launays contend. They argue that Vivian Arpad herself was bound by the stock restriction agreement, and that her ownership in the 54 shares of Launay, Inc. stock, in which Michael Arpad's ownership interest terminated with his death, is subject to the buy-sell agreement. The record raises the possibility that Vivian Arpad agreed to be bound by the stock restriction agreement. She was present when the buy-sell agreement was recorded in the minutes of the first stockholders' meeting and signed the stock restriction agreement. On the other hand, Michael Arpad did not sign the stock restriction agreement, even though his initials appear next to the signature line and he was also present at the first stockholders' meeting. Thus, the court was presented with an unresolved factual issue of whether both Vivian and Michael Arpad were parties to the agreement or, instead, only one of them was. *See Smith v. Onyx Oil and Chemical Co.,* 218 F.2d 104, 108 (3d Cir.1955) (although parties to contract may intend to put agreement in writing, contract may be formed even though writing is not signed by both when parties intend to be bound prior to signing); *Levinson v. Evening Star Newspaper Co.,* 138 F.Supp. 947, 950–51 (D.D.C.1955) (contract valid and binding even though defendant did not sign contract); *see generally* 17 Am.Jur.2d *Contracts* § 70 at 409 (1964) (that one party has signed contract does not always require other party to sign in order to create enforceable contract; one party may sign and the other acquiesce without signing).

The second unresolved issue of fact centers upon the parties' intent as to how the stock restriction agreement would be triggered. The buy-sell agreement by its terms was to apply upon the "death of *a* stockholder" (emphasis added). Yet the stock certificates were issued to tenants by the entirety each of whom had a right of survivorship. Under the circumstances, it is not clear whether the parties intended that the buy option be activated by the death of only one member of the tenancy by the entirety.

▬ The presence in the record not only of evidence that the parties, including Vivian Arpad, intended Raymond Launay to have the right to purchase the 54 Arpad

<hr>

**3.** Appellees argue that the directors rather than the stockholders were authorized to amend the bylaws. Even if that is so, it does not negate the relevance of the minutes to the issue of the intent of the parties.

shares if Michael Arpad predeceased him but also of countervailing evidence that Vivian Arpad was to become the owner of the shares if Michael Arpad predeceased her, precluded the grant of summary judgment in favor of Vivian Arpad. *See, e.g., Glekas v. Boss,* 437 A.2d 584, 587 (D.C. 1981) (summary judgment inappropriate when intent of parties crucial to explanation of ambiguous contract). We therefore reverse the dismissal of Count I of the original complaint and remand for a trial on the merits.[4]

### III

We next turn to the matter of attorneys' fees. At the hearing on the motion to dismiss the original complaint, the Launays requested leave to amend Counts II through IV. The court agreed to grant such leave. The Arpads then requested, "in light of the Court's action on the first four Counts, that Defendants [the Arpads] be awarded their costs of this motion.... Four of the five are gone." Judge Norman agreed to award reasonable costs. The judge then issued a written order that *inter alia* granted attorneys' fees and costs to the Arpads.[5] The Launays appeal from the award of attorneys' fees.

The Launays argue that the award of attorneys' fees is contrary to the so-called "American Rule" that a prevailing litigant is not entitled to collect attorneys' fees from the losing party. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *In re Antioch University,* 482 A.2d 133, 135–36 (D.C.1984).

The Arpads contend that they are entitled to an award of attorneys' fees under at least one of three recognized exceptions to the "American Rule." The first permits attorneys' fees to a person who preserves or recovers a fund or property for the benefit of others. *Alyeska,* 421 U.S. at 257, 95 S.Ct. at 1621; *Antioch,* 482 A.2d at 136; 6 J. MOORE, W. TAGGART & T. WICKER, MOORE'S FEDERAL PRACTICE § 54.77[2] at 1705 (2d ed. 1985) [hereinafter cited as MOORE'S FEDERAL PRACTICE]. The Arpads contend that they are "protectors" of the estate of Michael Arpad and of the corporation, Launay, Inc. If the Arpads are entitled to have their legal fees reimbursed as "protectors," they must collect them from the *fund,* not from the losing party. 6 MOORE'S FEDERAL PRACTICE § 54–17[2] at 1705–06 & n. 6–8; *Standard Lumber Co. v. Interstate Trust Co.,* 82 F.2d 346, 350

---

**4.** The Arpads made other arguments in support of the trial court's dismissal, but we find them unpersuasive. The Arpads argue that Raymond Launay's affidavit would be inadmissible at trial due to the parol evidence rule and statute of frauds, and therefore was barred from consideration by Super.Ct.Civ.R. 56(e). We disagree. Raymond Launay submitted an affidavit that referred to: the intent of both Michael and Vivian Arpad to be bound by the stock restriction agreement, *Vivian Arpad's statement that she signed the agreement on behalf of Michael Arpad,* and Raymond Launay's understanding that he would have the option to purchase the Arpads' stock upon Michael Arpad's death. The parol evidence rule does not bar oral statements prior to and contemporaneous with an ambiguous written agreement if they explain, rather than contradict, the writing. *Trans World Airlines, Inc. v. World Wide Airlines, Inc.,* 206 A.2d 821, 823 (D.C.1965).

Appellees' reliance on the statute of frauds is also misplaced. Since the agreement was by its terms capable, possible, or susceptible of performance within one year, the statute of frauds does not apply and an oral agreement may suffice. *Snyder v. Hillegeist,* 100 U.S.App.D.C. 368, 370, 246 F.2d 649, 651 (1957); D.C.Code § 28–3502 (1981).

We find unpersuasive the Arpads' further argument that the statute of limitations bars the Launays' claim. The Arpads contend that if there was a breach, it occurred when Mrs. Arpad failed to obtain her husband's signature on the agreement and when Michael Arpad himself failed to sign, both of which occurred 20 years prior to the instant action. To the contrary, the breach, if any, did not occur until the death of Michael Arpad and the Launays' offer to purchase the stock, which places the suit within the 3-year statute of limitations. D.C.Code § 12–301(7) (1981).

**5.** The Arpads' counsel filed an affidavit with the court listing $2,200 in attorneys' fees and $53 in costs for the motion to dismiss. The trial court awarded the Arpads costs and expenses of $1,153, apparently halving the submitted attorneys' fees and awarding all the requested costs.

(5th Cir.) (if plaintiffs were indeed preserving a fund, the trial court erred in charging fees not upon the fund, but upon the defendants), *cert. denied,* 299 U.S. 545, 57 S.Ct. 8, 81 L.Ed. 401 (1936). Thus, this exception to the "American Rule" cannot form the basis for the award.[6]

■ A second exception permits attorneys' fees when the other party "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska,* 421 U.S. at 258–59, 95 S.Ct. at 1622 (quoting *F.D. Rich Co. v. United States,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)); *see also Antioch,* 482 A.2d at 136; *Andrews v. District of Columbia,* 443 A.2d 566, 569 (D.C.), *cert. denied,* 459 U.S. 909, 103 S.Ct. 216, 74 L.Ed.2d 172 (1982); *Trilon Plaza Co. v. Allstate Leasing Corp.,* 399 A.2d 34, 37 (D.C.1979); 6 MOORE'S FEDERAL PRACTICE § 54–77[2] at 1709. The "bad faith" exception, however, applies only in extraordinary cases, *Andrews,* 443 A.2d at 569, and the record here is lacking in either a direct finding by the motions judge that the Launays acted in bad faith, or record support for such a finding. *Compare Wisconsin Avenue Associates v. 2720 Wisconsin Avenue Cooperative Association,* 385 A.2d 20, 24 (D.C.1978) (sufficient record support for award of attorneys'

fees); *Trilon Plaza,* 399 A.2d at 37–38 (refusal to permit marshal to execute writ of replevin without justification or excuse held to be sufficient to support award of attorneys' fees on grounds of bad faith).

■ A third exception to the general rule against attorney fees permits an award when the legislature has made "specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Alyeska,* 421 U.S. at 260, 95 S.Ct. at 1623 (discussing federal statutes); *see also Antioch,* 482 A.2d at 135–36 (in absence of special statute attorneys' fees not proper unless another exception met). The Arpads label the dismissal of Counts II through IV as a voluntary dismissal by the Launays pursuant to Super.Ct.Civ.R. 41(a)(2).[7] Federal courts commonly construe the nearly identical federal rule 41(a)(2) to authorize attorney fees. *See e.g. GAF Corp. v. Transamerica Ins. Co.,* 214 U.S.App.D.C. 208, 211, 665 F.2d 364, 367 (1981); *see generally* 5 MOORE'S FEDERAL PRACTICE § 41.06 at 41–74.

■ We disagree with the Arpads' contention that the trial court dismissed Counts II, III, and IV pursuant to Super. Ct.Civ.R. 41(a). We observe first that Rule 41(a) applies only to dismissals of an entire "action," not component "claims."[8] Judge

---

6. We make no ruling as to whether the Arpads might qualify as "protectors."

7. Super.Ct.Civ.R. 41(a) provides:
   (a) *Voluntary dismissal: Effect thereof.*
   (1) By plaintiff; by stipulation. Subject to the provisions of Rule 23(e), of Rule 66, and of any applicable statute, an action may be dismissed by the plaintiff without order of Court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.
   (2) By order of Court. Except as provided in paragraph (1) of this subdivision of this

Rule, an action shall not be dismissed at the plaintiff's instance save upon order of the Court and upon such terms and conditions as the Court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the Court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice. Super.Ct.Civ.R. 41 is essentially identical to FED. R.CIV.P. 41. Cases construing the latter are available for our guidance. *Boks v. Charles E. Smith Management, Inc.,* 453 A.2d 113, 114 n. 1 (D.C.1982).

8. In *Smith, Kline & French Laboratories v. A.H. Robins Co.,* 61 F.R.D. 24, 29 (E.D.Pa.1973), the court held that the term "action" is distinguishable from the term "claim."
   The Federal Rules and the cases which construe them thus make a clear distinction be-

Norman's order must be deemed instead to have authorized amendments under Super. Ct.Civ.R. 15(a).[9]

The Arpads argue that even if we apply Rule 15(a), the second sentence of that rule—governing amendments "only by leave of court"—authorizes an award of attorneys' fees in the same manner as Rule 41(a)(2).

It is true that Rule 15(a) specifies that leave to amend shall be freely given "when justice so requires." This provision has been interpreted by some courts and authorities to permit conditions to be imposed by the court in granting leave. 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1486 at 424 (1971) [hereinafter cited as WRIGHT & MILLER]; 3 MOORE'S FEDERAL PRACTICE ¶ 15.08[6]. The Arpads cite the discussion in MOORE'S approving the holding in *Etablissements Neyrpic v. Elmer C. Gardner, Inc.*, 175 F.Supp. 355 (S.D.Tex.1959), that a court may condition Rule 15(a) amendments by leave of court upon the same terms appropriate to Rule 41(a)(2) dismissals. 3 MOORE'S FEDERAL PRACTICE § 41.006–1. The Arpads argue that because Rule 41(a)(2) has frequently been construed to authorize attorneys' fees, the award here was proper.

We reject this theory on two grounds. First, Judge Norman did not "condition" the Launays' amendment upon payment of attorneys' fees. Rather, he awarded the fees to the Arpads outright. Second, even if the award had been a condition of further amendment, Rule 15(a) would not authorize it.

While the Rule 15(a) language—"when justice so requires"—has been construed to authorize a court to impose certain conditions before permitting an amendment by leave of court, we think it appropriate to require a more specific authorization before recognizing an exception to the "American Rule" against awarding attorneys' fees. *See Antioch*, 482 A.2d at 136 (no deviation from "American Rule" unless common law exception or legislative authorization).

We acknowledge that there would be a certain logical consistency to arming a court with identical powers to impose conditions whether the party is seeking amendment by leave of court under Rule 15(a) or voluntary dismissal of an entire action by order of court under Rule 41(a)(2).

The language of the two rules is not, however, identical. An order under Rule 41(a)(2) may be "upon such terms and conditions as the Court deems proper." The rule thus expressly grants the court the authority to impose various terms and conditions.[10] Rule 15(a), on the other hand, states only that leave to amend shall be

---

tween a *"claim"* and an *"action"*. Therefore, when Rule 41(a) refers to *dismissal of an "action"*, there is no reason to suppose that the term is intended to *include the separate claims which make up an action.* When *dismissal of a claim* is intended, as in Rule 41(b), that concept is spelled out in plain language. *Id. See also Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d 659, 662–63 (5th Cir.1979); *see generally* 5 MOORE'S FEDERAL PRACTICE § 41.06–1.

9. Super.Ct.Civ.R. 15(a) provides:

(a) *Amendments.* A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. If a pleading is dismissed or stricken with leave to amend, an amended pleading must be filed within 20 days unless otherwise provided by Order of Court. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the Court otherwise orders. FED.R.CIV.P. 15(a) is identical in relevant part. *See* Super.Ct.Civ.R. 15 comment.

10. Similarly, Super.Ct.Civ.R. 60(b), which permits relief from judgments "upon such terms as are just," authorizes the imposition of terms. This court construed the predecessor of Rule 60(b) to authorize the conditioning of relief on the payment of attorneys' fees. *Bridgett v. Perpetual Bldg. Ass'n*, 75 A.2d 780, 783 (D.C.1950).

given freely by the court "when justice so requires." This language is not specific enough to serve as a statutory exception to the deeply rooted "American Rule." [11] We have previously explained that the Supreme Court in its *Alyeska* decision "rejected the view that courts are free to assess attorneys' fees as the *interests of justice require.*" *Antioch,* 482 A.2d at 136 (emphasis added). The language of Rule 15(a) permits the court to take note of equitable considerations and may authorize the court to impose conditions under its equity power. But general equity power is an insufficient basis for an award of attorney fees. *Antioch,* 482 A.2d at 136. Because no statute or rule of court specifically authorizes the imposition of terms or conditions, we hold that Judge Norman lacked the authority to award attorneys' fees.

## IV

We next turn to the Launays' appeal from the dismissal of their amended complaint. The Launays exercised their leave to amend by filing an amended complaint in three counts. The first count stated a derivative action (rephrasing original Counts II and III). The second count was in defamation, and was intended to be more specific than original Count IV. The third count restated the demand for an accounting and partition of property held in joint tenancy (original Count V).

The Arpads moved to dismiss the amended complaint pursuant to Super.Ct.Civ.R. 12(b)(6) and 23.1. The Launays failed to respond with a statement of opposing points and authorities as required by Super.Ct.Civ.R. 12–I(e).[12] That rule permits the court to treat unopposed motions as conceded. On October 12, 1983, Judge Goodrich granted the Arpads' motion to dismiss the amended complaint with prejudice and without further leave to amend. The judge noted that the Launays failed to oppose the motion and that the dismissal was without further leave to amend, observing that the Launays had once availed themselves of leave to amend. The Launays appeal the dismissal of the amended complaint.

The court acted within its discretion in treating as conceded the motion to dismiss the derivative action (amended Count I) and the defamation action (amended Count II) and dismissing them with prejudice. The dismissal of the action for accounting and partition (amended Count III), however, presents a more difficult question because Judge Norman had earlier denied a virtually identical motion.

The Arpads converted the motion to dismiss the count seeking an accounting and partition into a motion for summary judgment by referring to a supporting affidavit that related to that count. Rule 12(b).[13] No such affidavit was filed in

---

**11.** This view is not contradicted by the holding of *Etablissements Neyrpic,* 175 F.Supp. 355. In that case, the plaintiff sought leave of court to eliminate two out of three causes of action from its complaint, 21 months after filing. The court required as a condition of the amendment that the two causes of action be dismissed with prejudice. Although the court held that it "should have the same discretion to impose conditions upon such amendment as it would upon a voluntary dismissal under Rule 41(a)(2)," *id.* at 358, the issue before the court was not whether the award of attorneys' fees was a proper condition under Rule 15(a). Nor does Wright and Miller's treatise suggest that attorneys' fees are proper when it remarks that "the most common condition imposed on an amending party [under Rule 15(a)] is costs." 6 WRIGHT & MILLER § 1486 at 424. "Costs" in this jurisdiction do

not include attorney fees. *See, e.g., 1901 Wyoming Avenue Cooperative Ass'n v. Lee,* 345 A.2d 456, 464 (D.C.1975).

**12.** Super.Ct.Civ.R. 12–I(e) provides in pertinent part:

> *Points and authorities; entry of motion; failure to file opposing points and authorities*
>
> . . . .
>
> A statement of opposing points and authorities shall be filed and served within 10 days or such further time as the Court may grant. If a statement of opposing points and authorities is not filed within the prescribed time, the Court may treat the motion as conceded.

**13.** The Arpads incorporated by reference the affidavit they had submitted with their motion to dismiss the accounting and partition count of the original complaint.

support of the motion to dismiss the derivative and defamation actions. A motion to dismiss is treated as one for summary judgment when "matters outside the pleadings are presented to and not excluded by the Court." Rule 12(b).[14] Unopposed motions for summary judgment may not, however, be treated as automatically conceded. *Kurth v. Dobricky*, 487 A.2d 220, 224 (D.C. 1985); *Milton Properties, Inc. v. Newby*, 456 A.2d 349, 354 (D.C.1983). Even if the unopposed motion for summary judgment may be deemed to establish that no genuine issue of material fact exists, the court must still determine whether the moving party is entitled to judgment as a matter of law. *Kurth*, 487 A.2d at 224; *Milton Properties*, 456 A.2d at 354.

Procedurally, the two motions regarding the partition claim here are quite similar to the two motions in *Kurth*. In that case, one judge denied the defendant's first motion for summary judgment. The defendant then filed a virtually identical second motion for summary judgment. A different judge granted it. In reversing, we observed that renewed motions for summary judgment may not be granted if the second motion is substantially similar to the first motion, the first ruling is sufficiently final, and the first ruling is not clearly untenable in light of newly presented facts or a change in law. *Kurth*, 487 A.2d at 224–25 (quoting *Tompkins v. Washington Hospital Center*, 433 A.2d 1093, 1098 (D.C.1981)). The renewed motion for summary judgment in *Kurth*, which added no new, material information, was held to have been granted improperly.

It is even clearer here than in *Kurth* that the movants relied on no new, material facts and cited no changes in the law in their renewed motion to dismiss. Therefore, we reverse the "dismissal" with prejudice of (summary judgment on) the accounting and partition count. We affirm, as discussed above, the dismissal with prejudice of the other two counts of the amended complaint.

## V

In addition to this appeal of Judge Goodrich's dismissal of the amended complaint, the Launays seek appellate review of Judge's Wolf's denial of their motion to vacate the dismissal.[15] We turn now to a review of the events surrounding the dismissal of the amended complaint on October 12, 1983.

Notice of that dismissal was mailed to the parties. The Launays' counsel promptly moved under Super.Ct.Civ.R. 60(b) for relief from the October 12 order of dismissal.[16] After a hearing, Judge Wolf denied relief.

The Launays based their request for relief on the circumstances surrounding the dismissal of the amended complaint. The Launays' counsel had received in the mail copies of two filings by the Arpads, both dated September 1, 1983. One of these filings was the Arpads' opposition to the Launays' previous motion to reconsider the dismissal of Count I of the *original* complaint and the award of attorneys' fees. The hearing on that motion was set for September 15, 1983. The other filing received by the Launays' counsel was a copy

**14.** *See supra* note 1 and accompanying text.

**15.** Since we affirm Judge Goodrich's dismissal of two of the three counts of the amended complaint, but reverse and remand on the third count, *see supra*, part IV, this discussion is relevant only to those first two counts.

**16.** Super.Ct.Civ.R. 60(b) provides in part:

  (b) *Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.* On motion and upon such terms as are just,

the Court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

of the Arpads' motion to dismiss the *amended* complaint.

A death in his family led the Launays' counsel to telephone opposing counsel to arrange the postponement of the hearing to September 30. There is no indication that counsel specifically discussed the opposition to the pending motion to dismiss.

On September 26, 1983, the Launays' counsel again tried to telephone the Arpads' counsel, but spoke instead with the latter's partner. He called to seek a further postponement because he believed that in view of his personal involvement in the suit the Launays should employ other counsel.[17] While there are some differences in recollection concerning the context of the conversation, counsel for the Launays states that he was left with the understanding that he and the Arpads' counsel's partner had agreed to cancel the September 30 hearing and return the entire case to the files to allow the Launays time to employ new counsel. Counsel for the Launays avers that he believed that his call, on September 26, to the clerk's office, after his conversation with the Arpads' counsel's partner, caused the return of all pending motions to the files. Apparently, the Launays' counsel mistakenly believed that both the Launays' motion to reconsider the award of counsel fees *and* the Arpads' motion to dismiss the amended complaint were set for hearing on September 15 and then postponed to September 30, 1983. In fact, only the motion to reconsider was set on those dates, so the Launays' counsel's call to the clerk had no effect upon the pending motion to dismiss the amended complaint. As a result, Judge Goodrich granted it on October 12 as an unopposed motion.

Counsel presented this convoluted history to Judge Wolf at the November 4, 1983,

hearing. Judge Wolf denied the Launays' motion for Rule 60(b) vacation of the dismissal. On appeal, the Launays seek reversal of this decision.

■■■ We review the denial of a motion seeking to vacate under Rule 60(b) upon an abuse of discretion standard. *Lynch v. Meridian Hill Studio Apts., Inc.,* 491 A.2d 515, 517 (D.C.1985); *Joseph v. Parekh,* 351 A.2d 204, 205 (D.C.1976). The Launays contend that Rule 60(b) relief was warranted because of the mistaken belief on the part of counsel for the Launays that the case had been taken off the motions calendar by the clerk and returned to the files. They further assert that the Arpads' motion to dismiss the amended complaint was treated as ready for decision before Judge Goodrich only because, contrary to counsel's assumption, it had not been scheduled for hearing with the reconsideration motion on either September 15 or 30, 1983. The Launays' counsel's misunderstanding of his conversations with counsel for the Arpads and the clerk is the type of misunderstanding, the Launays argue, that justifies relief under Rule 60(b)(1), citing *Chanofsky v. Chase Manhattan Corp.,* 530 F.2d 470, 472 (2d Cir.1976) (granting Fed.R.Civ.P. 60(b) relief where attorney misunderstood that judge treated hearing as a trial on the merits).

We disagree that the Launays' counsel's crucial mistake was a misunderstanding on September 26, 1983, about whether the case would be returned to files. Rather, his mistake occurred before that. The Launays' opposition to the motion to dismiss was due on September 15, 1983.[18] Failure to file such an opposition in time permitted the motions judge to treat the motion as conceded. Super.Ct.Civ.R. 12–I(e). The call to the clerk's office requesting the case to be returned to files did not relieve the

---

17. The Launays' counsel discovered at this time that he had drafted some of the 1962 documents relevant to the Launay, Inc. stockholders buy-sell agreement at issue in original complaint Count I, and might be a witness at trial.

18. *See* Super.Ct.Civ.R. 12–I(e) (opposition to motion to dismiss due within 10 days); Super. Ct.Civ.R. 6(e) (additional 3 days when service by mail); *Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801, 808–10 (D.C.1984) (adopting *federal court* method for computing time enlargement).

Launays' counsel of his obligation to file an opposition to the motion to dismiss. Thus, the Launays' counsel's crucial mistake was his failure to file the opposition or to take steps to enlarge the 10-day time period, on or before September 15, 1983.[19] Therefore, we need not focus on the steps taken by the Launays' counsel after September 15, 1983.

We noted recently in *Lynch* the general principle that at attorney's failure to understand or comply with court rules is a "mistake of law" that rarely warrants relief under Rule 60(b)(1). 491 A.2d at 518–19 (discussing *Wallace*, 482 A.2d at 804 & n. 10, and *Iu re Estate of Starr*, 443 A.2d 533, 537 (D.C.1982)). We held there that, although the trial court had discretion to grant relief, it did not abuse its discretion in denying relief where inexperienced counsel did not oppose a motion for summary judgment because of his mistaken belief that a hearing would be scheduled as a matter of course. *Id.* Counsel failed to notice that under Rule 12–I, which is cross-referenced in the comment to Rule 56 governing summary judgment, an opposition must be filed within 10 days. *Id.*

██ Just as in *Lynch*, counsel for the Launays presented no exceptional circumstance that rendered the judge's denial of relief an abuse of discretion. Counsel admitted receiving the Arpads' opposition, but offered no reason justifying his failure to oppose it in a timely manner, or to obtain an extension of time to oppose. Counsel did not attribute his failure to file an opposition to the death that had occurred in his family. Rather, he mentioned the death of his mother-in-law only as the occurrence that prompted him to seek a continuance of the hearing on the motion for reconsideration. We therefore hold that Judge Wolf did not abuse his discretion when he denied the Launays' motion for Rule 60(b) relief.

## VI

The Arpads propose that regardless of our disposition of the Launays' claims of action against defendants Launay, Inc., Vivian Arpad, and Michael Arpad, the dismissal of the Launays' complaint on all counts should be affirmed for the defendant estate of Michael Arpad.[20] This argument relies on the Launays' asserted failure to comply precisely with the presentation, verification, and timeliness requirements for claims against an estate. *See* D.C.Code §§ 20–102, –901, –903, –905 (1981). The Launays counter that § 20–905 permits the court, in its discretion, to disallow a claim in whole or in part for noncompliance with presentation requirements. Furthermore, the Launays argue, the service of their complaint satisfied the statute's basic goal of notification of the personal representative of a pending claim against the estate.

Although Judge Norman was presented with this issue, he made no explicit ruling. We are unwilling to infer any decision where the counts against the estate were dismissed on other grounds. Therefore, it is incumbent upon the Launays on remand to ask the trial court to rule in the exercise of its discretion whether the estate shall remain a party.

*Affirmed in part, reversed in part, and remanded.*

TERRY, Associate Judge, concurring:

I join in the court's disposition of this case, and for the most part I concur in Judge Belson's opinion for the court. I do not agree, however, with the first half of part IV, which affirms the trial court's

19. The 10-day (or, if mailed, 13-day) time period for filing an opposition may be enlarged by the court upon request under Super.Ct.Civ.R. 6(b)(1), or enlarged by the clerk upon consent of the parties under Super.Ct.Civ.R. 77–II(a)(1). Enlargement requests under both rules must be made *within* the original 10- or 13-day time period.

20. In summary, we have herein held that the Launays are free to maintain suit on remand on the buy-sell agreement (original complaint Count I) and the accounting and partition action (original complaint Count V/amended complaint Count III). The estate of Michael Arpad is apparently not a party to the accounting and partition action.

**456**

granting of the Arpads' motion to dismiss the derivative action (amended count I) and the defamation action (amended count II), a ruling which my colleagues uphold as within the trial court's discretion under Super. Ct.Civ.R. 12–I(e). I think the trial court's ruling warrants closer scrutiny.

Even though Rule 12–I(e) permits the court in its discretion to treat an unopposed motion as conceded, I believe it would be an abuse of discretion to do so with respect to a Rule 12(b)(6) motion unless the motion is actually meritorious. If the complaint really does state a claim upon which relief can be granted, then in my judgment it is an abuse of discretion to grant an unopposed Rule 12(b)(6) motion, notwithstanding Rule 12–I(e). Judge Belson correctly states at page 18, "Unopposed motions for summary judgment may not, however, be treated as automatically conceded," citing *Kurth v. Dobricky,* 487 A.2d 220 (D.C. 1985), and *Milton Properties, Inc. v. Newby,* 456 A.2d 349, 354 (D.C.1983). I think that the same rule should apply to Rule 12(b)(6) motions,[1] and that *Kurth* and *Milton Properties* govern this aspect of the instant case. Thus it is not sufficient to say merely that the trial court acted within its discretion in treating the motion to dismiss as conceded; the court was obliged to examine the complaint and determine whether it really did fail to state a claim so that appellees were entitled to dismissal as a matter of law. On appeal we must apply the same standard in reviewing the trial court's decision.

Fortunately, the amended counts I and II were dismissible for essentially the reasons asserted here by appellees. Count I did not contain any allegation that the action was not collusive, as required by Super.Ct. Civ.R. 23.1. Nor was it verified, which Rule 23.1 also demands. Count II failed to allege sufficient facts to support a claim of defamation against Sheldon Arpad; the defect in count IV of the original complaint was not cured by the amended complaint.

I therefore would affirm the dismissal of these two counts, not merely as an exercise of trial court discretion under Rule 12–I(e), but on the merits.

In all other respects I am in full agreement with Judge Belson's opinion.

---

**1.** Nothing in Rule 12–I suggests that motions for summary judgment should be treated different-

ly from other kinds of motions. *See Pagan v. Horton,* 464 A.2d 146, 148 (D.C.1983).