289 A.2d 620 (1972)
The CITIZENS BUILDING AND LOAN ASSOCIATION OF MONTGOMERY COUNTY, Inc. n/k/a the Citizens Building and Loan Association, Inc., Appellant,
v.
Alma SHEPARD (Deceased) et al., Appellees.
No. 6097.
District of Columbia Court of Appeals.
Argued February 14, 1972.
Decided April 6, 1972.
Rehearing Denied June 20, 1972.
*621 Irving Turner, Arlington, Va., with whom Joe M. Kyle, Silver Spring, Md., was on brief, for appellant.
Marilyn Fisher, Washington, D. C., with whom Norman C. Barnett, Washington, D. C., was on brief, for appellees.
Before HOOD, Chief Judge, and FICKLING and PAIR, Associate Judges.
FICKLING, Associate Judge:
The question presented by this appeal is whether the trial court erroneously granted appellees' motion to vacate default judgment and quash writs of attachment pursuant to Rule 60(b) (6) of the Civil Rules of the Superior Court. We affirm.
On September 10, 1965, appellant filed a complaint against appellees in the District of Columbia Court of General Sessions[1] seeking a judgment for the unpaid balance of a promissory note. The note had been executed on January 4, 1965, by appellees, who were mother (Mrs. Shepard, now deceased) and daughters (Mrs. Brewster and Mrs. Jackson), in return for certain improvements made by Monarch Construction Corporation to a house owned by them. Appellant's complaint alleged that it was a holder in due course of the note and that appellees had refused to pay the balance due. Personal service of process was made upon each of the appellees on September 13, 1965. The following day Mrs. Jackson called the office of a member of the local bar and asked for an appointment. Because of that attorney's hospitalization, Mrs. Jackson did not meet with him until September 28, 1965. Although the precise nature of the conversation between the attorney and Mrs. Jackson was in dispute, it is clear from the record that Mrs. Jackson requested him to represent appellees and that he was given the summons and complaint. The trial court found that the attorney "actively took to represent these people" and we cannot say that finding was plainly wrong. Mrs. Jackson called the attorney's office twice before October 5, 1965. Each time she was assured that the suit was progressing normally and that he was protecting appellees' interest. No answer to the complaint was filed and a default judgment was entered on October 5, 1965. Appellees and the attorney were unaware of the default, and he continued to tell Mrs. Jackson, who called frequently, that the suit was progressing. In fact, the only pleading filed by the attorney was a motion for security for costs, filed on October 8, 1965  three days after the default judgment had been entered. Appellees and the attorney continued unaware of the judgment through 1965 and 1966. Mrs. Shepard died on July 8, 1966, and her daughters visited the attorney in connection with settling her estate. They inquired about the suit and were again advised that it was progressing normally. In January 1967 appellant filed writs of attachment in execution of the default judgment. The garnishees filed their answers to the writs and appellees' wages were garnished. Mrs. Jackson learned of the garnishment from her employer and immediately contacted the attorney, who told appellees that there was nothing he could do and his only advice was to change jobs.
At this point, early February 1967, appellees withdrew their file from this attorney and sought the assistance of the Legal Aid Society. That agency referred them to the Lawyer Referral Service of the Bar Association of the District of Columbia, which referred them to another local attorney. This second attorney advised appellees that nothing could be done about the default *622 judgment and that their best course of action would be to sell their house and pay off the note. He agreed to help sell the house, but advised appellees to wait until after the election in November 1967 before selling because prices would be higher then. In keeping with this advice, appellees did nothing through 1967 and into early 1968. By 1968 appellees had decided not to sell their home and returned to the second attorney, who told them nothing else could be done. Appellees withdrew their file from him and sought no further advice.
In September 1970 appellees received a letter from the United States Attorney's office advising them that the officers of Monarch had pleaded guilty to criminal fraud arising out of their home improvement transactions and that persons who had dealt with Monarch should see a lawyer. Appellees immediately sought out another attorney. This third attorney told appellees that he could help them but that it would take a long time. Appellees left the file with him and called frequently. In July 1971 appellees withdrew the file from this attorney after he told them they might be finished paying for the garnishment before he could get anything done for them.
During July 1971 appellees contacted the Neighborhood Legal Services Program which immediately filed the motion to vacate the default judgment on July 20, 1971.
After a hearing on the motion at which both appellees, the first attorney, and his secretary testified, the trial judge vacated the default "pursuant to Rule 60(b) (6)." This appeal followed.
Appellant contends that the conduct of these three attorneys amounted to no more than mistake and excusable neglect as contemplated by subsection (1) of Rule 60(b).[2] Therefore, the trial court lacked jurisdiction to vacate the default judgment because appellees' motion was filed after the one-year time limit permitted by the rule. We do not agree.
A motion to vacate a default judgment is addressed to the sound discretion of the trial court, the exercise of which will not be disturbed on appeal except for abuse. Waxler v. Levin, D.C.Mun. App., 131 A.2d 294 (1957). . . . [Tribble v. American Mutual Insurance Co., D.C.App., 277 A.2d 659, 661 (1971).]
In the instant case the trial judge vacated the default judgment "pursuant to Rule 60 (b) (6)" because he found that the actions of these attorneys were not "mistake" or "excusable neglect" but were "patently erroneous," "curbstone, uninformed advice reach[ing] the level, almost, of absurdity," and he charitably characterized the failure to file an answer as an "oversight."[3]
*623 The trial court by clear implication found that each of these attorneys was guilty of inexcusable neglect because their conduct was either in violation of their express instructions or of their duty to devote reasonable efforts in representing their clients. Railway Express Agency, Inc. v. Hill, D.C.App., 250 A.2d 923, 926 (1969); Jones v. Roundtree, D.C.App., 225 A.2d 877 (1967); Askew v. Randolph Carney Co., D.C.Mun.App., 119 A.2d 116 (1955). We cannot say that this finding was clearly erroneous. During the development of this disheartening chain of events, appellees' express instructions (to file an answer) were ignored. Cf. Barber v. Turberville, 94 U.S.App.D.C. 335, 218 F.2d 34 (1954); Transport Pool Division of Container Leasing, Inc. v. Joe Jones Trucking Co., 319 F. Supp. 1308, 1311 (N.D.Ga.1970). They were given "patently erroneous" advice, Patapoff v. Vollstedt's, Inc., 267 F.2d 863, 865 (9th Cir. 1959); or their case was grossly neglected and they were lulled into inaction by misleading assurances, L. P. Steuart, Inc. v. Matthews, 117 U.S.App.D.C. 279, 329 F. 2d 234, cert. denied, 379 U.S. 824, 85 S.Ct. 50, 13 L.Ed.2d 35 (1964); King v. Mordowanec, 46 F.R.D. 474 (D.R.I.1969); Lucas v. Juneau, 20 F.R.D. 407 (D.Alas. 1957).
Because of the gross and inexcusable conduct of these attorneys, their conduct is not imputed to their clients. Railway Express Agency, Inc. v. Hill, supra 250 A.2d at 926. On the other hand, appellees' conduct was not negligent. We agree with the trial court's findings that appellees "used reasonable and extreme diligence" in attempting to protect their rights.
Rule 60(b) (6) prescribes no time limit other than "within a reasonable time" during which a motion seeking relief must be filed. "What is reasonable must be interpreted in light of all the facts in the case." Tribble v. American Mutual Insurance Co., supra 277 A.2d at 661; Royal Credit Co. v. Mas Marques, D.C.App., 222 A.2d 70, 71 (1966). In the case at bar, the motion was filed immediately after appellees contacted their present counsel. The 5-year 9-month period between the default judgment and the filing of the motion is not chargeable to appellees because of their reasonable, but misplaced, reliance on the misleading statements of their attorneys.
We hold that Rule 60(b) (6) was properly applied and that the trial court did not abuse its discretion in setting aside the default judgment. Moreover, an adequate defense has been alleged which, if substantiated at trial, could defeat the principal claim. Meadis v. Atlantic Construction & Supply Co., D.C.App., 212 A.2d 613, 615 (1965).
Affirmed.
HOOD, Chief Judge, (dissenting):
It is my opinion that the motion to set aside the default was not filed within a reasonable time and should have been denied. From January 1967, when the attachments began and when appellees were made aware of the judgment against them, until July 1971, when the motion to vacate was filed, a period of 4½ years elapsed.
Whatever may be said of the conduct of the first attorney consulted by appellees, I do not think the conduct of the second and third attorneys can be said to be so "inexcusable" as to make "excusable" the long delay of appellees. As we said in Railway Express Agency, Inc. v. Hill, 250 A.2d 923, 926 (1969):
Ordinarily, the acts and omissions of counsel are imputed to the client even though detrimental to the client's cause. This rule is necessary for the orderly conduct of litigation. . . .
I do not think we can look alone at the position of appellees. Appellant also has rights. It obtained a judgment in 1965 and relying upon its validity has issued numerous attachments on it. Appellant will be forced now to meet a defense based upon a transaction which occurred 7 years ago.
I would reverse.
NOTES
[1] Now the Superior Court of the District of Columbia.
[2] Rule 60  RELIEF FROM JUDGMENT OR ORDER  states in pertinent part:

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . .
[3] "Clearly, the reason why a default was permitted to be entered here was the oversight  and I use that term advisedly; the oversight; I do not use another term because of the possibility of other proceedings; I use the term `oversight' of counsel in not filing the answer timely, and I specifically find that he was not waiting on anybody to come in to be interviewed to file an answer." Tr. at 80.