**Paul CLEMENCIA, Appellant,**

v.

**Camay MITCHELL, Appellee.**

No. 06–CV–819.

District of Columbia Court of Appeals.

Argued April 28, 2008.

Decided Sept. 11, 2008.

O'Neil King, Washington, DC, with whom Matthew H. Goodman, was on the brief, for appellant.

Joseph Cammarata, Washington, DC, for appellee.

Before RUIZ and THOMPSON, Associate Judges, and FERREN, Senior Judge.

THOMPSON, Associate Judge:

Appellant Paul Clemencia[1] appeals the Superior Court's denial of his motion to vacate the default judgment entered against him in a personal injury action arising out of a vehicle collision in which he rear-ended the automobile of appellee Ca-

may Mitchell. We affirm the trial court's ruling.

## I. Facts

On or about June 16, 2003, Clemencia, driving a vehicle owned by his mother Ruth Williams, hit Mitchell's vehicle near the intersection of 3rd Street and New York Avenue, N.W. On October 12, 2005, Clemencia was served with the summons and complaint in Mitchell's suit against him. He failed to file a timely answer to the complaint. According to Mitchell's counsel, this was notwithstanding a telephone call on October 28, 2005, in which Mitchell's counsel advised Clemencia that he should contact the vehicle insurer, State Farm Insurance Company, and gave Clemencia the name and telephone number of a State Farm adjuster.

On November 22, 2005, with Clemencia still not having answered the complaint, Mitchell's counsel contacted State Farm and notified the company of the pending lawsuit. A representative of State Farm indicated that the company was unaware of the lawsuit prior to receiving notice from Mitchell's counsel, and requested a copy of the Affidavit of Service. On November 28, 2005, State Farm received a copy of the Summons, Complaint, and Affidavit of Service. State Farm faxed the documents to Attorney Thomas Medford on November 29, 2005, with a notation that Mitchell's counsel planned to seek a default judgment on that same day. Attorney Medford did not immediately file an answer on Clemencia's behalf or seek leave of court to file a late answer.

On December 2, 2005, the Clerk of the Superior Court entered an Order of Default against Clemencia, see Super. Ct. Civ.

---

1. The various pleadings in this matter refer to appellant's last name as "Clemenica," but at oral argument his counsel advised the court that the proper spelling is "Clemen-cia." Appellant also signed his surname as "Clemencia" on his verified answer and in an affidavit. Accordingly, we refer to him as "Clemencia."

R. 55(a),[2] for failing to file his answer within the time allotted by Super. Ct. Civ. R. 12(a). On December 3, 2005, Attorney Medford filed on behalf of Clemencia a Motion to Vacate the Order of Default. Attached to the motion was a purported "Verified Answer" that was signed by Attorney Medford rather than by Clemencia himself.[3] Mitchell opposed the motion, arguing that there was no showing of good cause for failure to timely file an answer and that the late-filed answer was not verified by defendant Clemencia as is required by Super. Ct. Civ. R. 55(c) and Super. Ct. Civ. R. 9–I. On January 17, 2006, the court signed a one-sentence order denying Clemencia's motion. The court set March 3, 2006, as the date for a hearing on damages. *See* Super. Ct. Civ. R. 55(b)(2).[4]

On February 21, 2006, Attorney Medford filed a Motion to Reconsider the denial of the motion to vacate the entry of default. The motion was accompanied by an affidavit signed by Clemencia,[5] but not by a verified answer. On March 3, 2006, the date set for the hearing on damages, the court first heard oral argument from both parties on Clemencia's motion for re-

consideration. Attorney Medford explained that in the past, he had filed verified answers "with counsel signing." The court denied the motion for reconsideration, reasoning that Clemencia had failed to file the verified answer required by Rules 9–I and 55(c) and, in addition, had failed to show good cause for vacating the default, as also required by Rule 55(c).

Thereafter, the court heard evidence on damages. The court heard testimony from Mitchell, her treating neurologist, and an expert economist. Attorney Medford cross-examined each witness but did not call any witnesses on Clemencia's behalf. Clemencia was not present at the hearing. At the close of the evidence, Mitchell's counsel summarized the evidence that Mitchell had incurred approximately $13,000 in medical expenses, $150,000 to $202,000 in lost wages (as discounted to present value), as well as pain and suffering and loss of enjoyment. Mitchell prayed for damages of $750,000.

At the close of the Rule 55(b)(2) hearing, the trial court entered judgment in Mitchell's favor in the amount of $230,000. The

2. Super. Ct. Civ. R. 55(a) provides in pertinent part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these Rules, the Clerk or the Court shall enter the party's default."

3. Super. Ct. Civ. R. 55(c) provides in pertinent part that "[f]or good cause shown, and upon the filing of a verified answer setting up a defense sufficient if proved to bar the claim in whole or in part, the Court may set aside an entry of default." Super. Ct. Civ. R. 9–I provides that verification may be made by an attorney only "(1) when a corporation is a party; (2) when the facts are within the personal knowledge of the attorney or agent; (3) when the party is an infant, or of unsound mind, or in prison; or (4) when the party is absent from the District of Columbia."

4. Rule 55(b)(2) provides in pertinent part that

[i]f, in order to enable the Court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the Court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any applicable statute.

5. The affidavit averred that on January 6, 2006, Clemencia appeared in court, without counsel, for what he believed was a scheduling conference, and that he was advised at that time by a courtroom clerk that Mitchell did not show and that "they" would be getting in touch with him.

court scheduled an oral examination,[6] *i.e.,* discovery in aid of execution of judgment, for April 21, 2006. Clemencia retained new counsel (O'Neil King), and on April 19, 2006, Attorney King filed on Clemencia's behalf a Motion to Vacate the Default Judgment, arguing that Clemencia's previous counsel, Attorney Medford, had committed gross and inexcusable neglect that constituted an extraordinary circumstance entitling Clemencia to relief from judgment under Super. Ct. Civ. R. 60(b). The court denied this motion in an order dated June 28, 2006, finding that Attorney Medford's "mistake of law" (about the need for an answer verified by Clemencia) did not warrant relief under Rule 60(b)(1), and finding no evidence of grossly negligent behavior or outrageous conduct that could justify relief under Rule 60(b)(6). This appeal followed.

## II. Standard of Review

■ We review the denial of a motion seeking to vacate a judgment under Rule 60(b) under an abuse-of-discretion standard. *Lynch v. Meridian Hill Studio Apts., Inc.,* 491 A.2d 515, 517 (D.C.1985). That is, "[t]he grant or denial of a motion to vacate is within the discretion of the trial court, and its determination will be disturbed on appeal only upon a showing of abuse of discretion." *Id.* (citation and internal quotation marks omitted). We also recognize that the trial judge is "in the best position to evaluate the immediate circumstances of the case and the credibility of the parties" as they bear on the movant's entitlement to relief under Rule 60(b). *See Firestone v. Harris,* 414 A.2d 526, 528 (D.C.1980).

## III. Analysis

■ Clemencia contends that the trial court abused its discretion in not treating the circumstances leading up to his motion as an "unusual and extraordinary situation[ ]," *Railway Express Agency, Inc. v. Hill,* 250 A.2d 923, 925 (D.C.1969)—specifically, what he calls a pattern of "extreme and outrageous conduct by Counsel [Medford] in failing to reasonably represent his client's interests"—that entitled him to relief from judgment under Super. Ct. Civ. R. 60(b)(6).[7] He also argues that the court erred by failing to take into consideration the factors that this court has said generally must be considered when a trial court

6. *See* Super. Ct. Civ. R. 69–I(b) ("Oral examination in Court") (providing in pertinent part that "[t]he plaintiff may summon the defendant and, upon leave of court, any other person to appear in court on a date certain and submit to oral examination respecting execution of any judgment rendered. Any person so summoned may, upon leave of Court, be required to produce papers, records, or other documents at the examination").

7. Clemencia argues in the alternative that he is entitled to relief under Super Ct. Civ. R. 60(b)(1) because of Attorney Medford's mistaken understanding that the answer tendered with Clemencia's Rule 55(c) motion to vacate could be verified by Medford rather than by Clemencia himself. *See* Super Ct. Civ. R. 60(b)(1) ("On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ...."). He relies on our statement in *Lynch* recognizing that while "a mistake of law will rarely warrant relief [under Rule 60(b)(1)]," 491 A.2d at 518 (citation and internal quotation marks omitted), "a mistake of law, under some circumstances, has furnished the basis for postjudgment relief." 491 A.2d at 519. However, we do not see this as a case where we should apply an exception to the general principle that "an attorney's mistake of law will not serve as [a] basis for Rule 60(b)(1) relief." *Id.* That is because, as the trial court found and as we discuss *infra,* Clemencia failed to act with diligence to protect his rights, distinguishing his case from cases in which an exception has been made.

determines whether to vacate a judgment pursuant to Rule 60(b).

Super. Ct. Civ. R. 60(b)(6) provides in pertinent part that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of judgment." As Clemencia correctly notes, we have held that where an attorney's neglectful failure ... in handling a client's case ... amount[s] to conduct "outrageously in violation of ... [the attorney's] implicit duty to devote reasonable efforts in representing his client," it may warrant relief under Rule 60(b)(6). *See, e.g., Citizens Bldg. & Loan Ass'n of Montgomery Cty. v. Shepard*, 289 A.2d 620 (D.C.1972); *see also Clark v. Moler*, 418 A.2d 1039, 1043 (D.C.1980) (holding that the trial court abused its discretion in denying motion to vacate default judgment under Rule 60(b)(1) where the attorney failed to file a timely answer and took no steps to set aside the default even though instructed by the clerk of the court about how to move to vacate the default, and where the client took the complaint to the attorney within the twenty-day period for filing and an answer and alleged facts that "[i]f proven ... would bar her vicarious liability"); *Railway Express*, 250 A.2d at 925 (noting that we "have restricted the application of subsection (6) [of Super. Ct. Civ. R. 60(b)] to unusual and extraordinary situations" and recognizing that the total disregard by an attorney of his client's cause is an exceptional occurrence); *see also Lynch*, 491 A.2d at 519 (noting that "[c]ounsel's conduct will not be imputed to the client" when counsel has outrageously neglected the duty to devote reasonable efforts in representing his client).

In *Citizens*, we agreed that the trial court had not abused its discretion in setting aside a default judgment entered against defendants in a matter brought by the holder of a promissory note, which defendants had given in connection with certain improvements that a construction company had made. to their home. A string of attorneys had failed, in turn, to file an answer on defendants' behalf and to take steps to vacate the resultant default judgment. *See* 289 A.2d at 623. We noted that defendants' case had been "grossly neglected, that they were lulled into inaction by misleading assurances," and that the "disheartening chain of events" had included "patently erroneous advice" and the attorneys' ignoring of defendants' express instructions. *Id.* We also emphasized that the defendants' conduct "was not negligent"; instead, as the trial court found, defendants had " 'used reasonable and extreme diligence' in attempting to protect their rights." *Id.* In addition, we pointed out that defendants had received a letter from the U.S. Attorney's Office advising them that the officers of the construction company "had pleaded guilty to criminal fraud arising out of their home improvement transactions and that persons who had dealt with [the company] should see a lawyer," *id.* at 622—a circumstance that suggested that defendants had a meritorious defense to enforcement of the underlying promissory note. *See id.* at 623 ("an adequate defense has been alleged which, if substantiated at trial, could defeat the principal claim").

Contrast *Railway Express*, a case in which the trial court dismissed plaintiff's action for want of prosecution after no one appeared for plaintiff at the scheduled pretrial hearing. Plaintiff, who did not learn of the dismissal until nearly twenty months later, retained new counsel to file a motion to revive the action. *See* 250 A.2d at 924. Although plaintiff supported his motion with allegations of neglect of duty by his previous attorney and by an affida-

vit stating that he had not been given notice of the pretrial hearing, we reversed the trial court order reinstating the action. We reasoned that reversal was required because the plaintiff had "showed a remarkable indifference to the progress and prospects of his suit against the defendant," *id.* at 926, "evidenced by his failure to contact his attorney for at least the twenty-month period following the entry of the judgment of dismissal." *Id.* We applied the rule that "[w]hen the conduct of counsel is not imputed to the client, we look to the conduct of the client himself for purposes of applying rules such as 60(b)." *Id.*

■ For several reasons, we are persuaded that this case is more like *Railway Express* than like *Citizens* or *Clark,* and that the trial court did not abuse its discretion in concluding that relief from judgment under Super Ct. Civ. R. 60(b)(6) was not warranted. Like the trial court, we think that whether Attorney Medford was grossly negligent is "debatable." Order at 6. Although Attorney Medford did not file an answer or move for leave to late-file an answer on the same day he received the Clemencia file (with a notation that Mitchell planned to move for default that very day, November 29, 2005), he did move to vacate the default on December 3, 2005, the day after the default was entered.

And the trial judge found that Medford's "failure to file a properly verified answer" suggested "that the defendant was not cooperating with his attorney," Order at 6 n. 3, an inference for which the record provides some support. For example, lack of cooperation by Clemencia may best explain why Attorney Medford failed to file a verified answer with his motion for reconsideration despite Mitchell's counsel having waved this omission as a "red flag" in Mitchell's earlier opposition to Clemencia's motion to vacate the entry of default.[8]

■ But even if we assume that Clemencia was cooperative, and that Attorney Medford's omissions with respect to the verified answer evidenced a misunderstanding of the law that could have been "avoided through due diligence of counsel"[9] (and that therefore did not constitute "excusable neglect,"[10]) we would still conclude that the court did not abuse its discretion in declining to find Attorney Medford's conduct so outrageous as not to be imputed to his client. That is because the evidence did not compel the trial court to find that there was a pattern of neglect of duty such as was present in *Citizens* and *Clark.*[11] As a further example of facts that establish a pattern of neglect, Clemencia points to Attorney Medford's failure to call him to testify at the hearing on

8. The court's non-cooperation theory does not, however, comport with the fact that Attorney Medford was able to obtain Clemencia's signature on the affidavit that accompanied the motion for reconsideration.

9. *Lynch,* 491 A.2d at 518.

10. *Id.,* citing *In re Estate of Starr,* 443 A.2d 533, 537 (D.C.1982).

11. We observed in *Clark* that "[d]espite the Clerk's rejection of the untimely answer and a letter notice of the appropriate steps to be taken to set aside the default, the attorney took *no further action on the case.*" 418 A.2d

at 1042 (italics added). By contrast, Attorney Medford did not entirely fail to advocate on Clemencia's behalf. For example, when Mitchell's counsel asserted at the damages hearing that Clemencia's counsel could be permitted to cross-examine witnesses but not to introduce evidence, Attorney Medford cited authority, *Lockhart v. Cade,* 728 A.2d 65 (D.C. 1999), that, he told the court, precluded Clemencia as the defaulting party from "offering a defense on the issue of liability" but "does not preclude anything on the issue of damages."

damages.[12] He contends that his testimony could have established that the accident resulted in no visible vehicle damage, that Mitchell denied injury at the accident scene, and that she told him at that time that she had been injured a week earlier in a hit-and-run accident and received treatment in a hospital. Clemencia implies that such testimony could have called into question whether Mitchell's injuries had actually been caused by the rear-end collision. But this argument overlooks the fact that an entry of default in favor of a plaintiff resolves issues of liability—*i.e.*, issues of both negligence and causation[13]—leaving as the only remaining issue the amount of damages that the plaintiff has sustained. *See Firestone*, 414 A.2d at 528 ("the defaulting party may not introduce evidence to defeat his opponent's right to recover at the hearing to establish damages"). In short, there was no basis for the trial court to conclude that Attorney Medford was grossly negligent in failing to call Clemencia to give testimony in an effort to rebut Mitchell's claim that he caused the injuries of which she complained, because the potential testimony that Clemencia's brief describes would have been of little if any relevance at a hearing limited to damages.

*Cf. Siebert Oxidermo, Inc. v. Shields*, 446 N.E.2d 332, 338 (Ind.1983) ("Substantive defenses as to causation are no longer an issue between parties after there has been an entry of default against the defendant.").

Moreover, even if Attorney Medford was neglectful, under our case law Clemencia cannot be entitled to relief unless he acted promptly to protect his rights. *See Citizens*, 289 A.2d at 623; *Clark*, 418 A.2d at 1041; *Railway Express*, 250 A.2d at 926. There is little evidence—and certainly no compelling evidence—that he did so. He did not timely file an answer, nor did he retain counsel before an answer was due. He asserts that he did come to court for what he thought was a scheduled status hearing in January 2006, but beyond that he seems to have initiated action—and then to have retained counsel rather promptly—only after the court scheduled the oral examination, *i.e.*, when he was imminently threatened with having to pay a judgment. Thus, he did not use diligence in attempting to protect his rights.[14]

■ Further, Clemencia's answer, as proffered by his current counsel in support of the motion to vacate default judgment, does not assert a "prima facie adequate

---

**12.** Attorney Medford did cross-examine Mitchell's witnesses, including about such matters as her expert economist's interest-rate assumptions and the type of damage to Mitchell's car, and he introduced a photograph of Mitchell's vehicle as a defense exhibit. He did not question Mitchell about a prior accident, but we cannot know his reason for that omission. Perhaps he believed that he had no good faith basis for the inquiry; we note that Clemencia's affidavit omits any mention of Mitchell having told him about a prior traffic-accident related injury. In any event, Mitchell testified that prior to the rear-end collision, she had never injured her shoulder or neck (which were the focus of her complaints of injury and pain arising out of the rear-end collision).

**13.** *See Twyman v. Johnson*, 655 A.2d 850, 852 (D.C.1995) (explaining that liability entails both negligence and causation).

**14.** This also is not a case where we can discern "nothing in the record indicating lack of good faith on [appellant's] part and ... no showing of a willful disregard or contempt of the process of the court." *Manos v. Fickenscher*, 62 A.2d 791, 793 (D.C.1948). The court's order denying the motion to vacate default judgment recites that Clemencia appeared at the oral examination, which had been rescheduled to April 28, 2006, but refused to participate in it, eventually doing so only after the court has issued an order requiring him to show cause why he should not therefore be held in contempt of court. Order at 3–4.

defense." *Clark*, 418 A.2d at 1043.[15] Clemencia does assert that Mitchell "proceeded on a green light, then came to a sudden stop for no apparent reason," but, notably, fails to assert that he exercised due care and did not "follow [Mitchell's] vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicle being followed, the traffic upon the highway, and the condition of the highway." *Pazmino v. Washington Metro. Area Transit Auth.*, 638 A.2d 677, 679 (D.C.1994) (quoting 18 DCMR § 2201.4 (1987)—substantially similar to a provision currently codified at 18 DCMR 2201.9 (2008)). This omission is especially noteworthy in light of the fact that such an averment—a statement that Clemencia "admits that he, like all drivers in the District of Columbia[,] has a duty to follow the rules of the road and respectfully submits that he did at all times relevant to the incident that gave rise to the case at bar"—was contained in the answer that was verified by Attorney Medford. Yet, in our jurisdiction, the general rule is that "the primary duty to avoid collision as between motorist ahead and the motorist following lies with the motorist behind." *Pazmino*, 638 A.2d at 679. Clemencia might have established a prima facie adequate defense had he asserted and explained in his verified answer that he was driving at a safe distance behind Mitchell, but his verified answer contains no such assertion, without which he was not entitled to relief under Rule 60(b).[16] *See Clark*, 418 A.2d at 1043.

Two additional factors persuade us not to disturb the trial court's order denying Clemencia relief from judgment. One is that Clemencia did have an opportunity at the hearing on damages to contest the amount of damages being claimed (and he did so to a limited extent). *See Firestone*, 414 A.2d at 528 (although, at a Super. Ct. Civ. R. 55(b) hearing, "the defaulting party may not introduce evidence to defeat his opponent's right to recover at the hearing to establish damages, he is entitled to present evidence in mitigation of damages and cross-examine witnesses"). The second factor is that the trial court's award of damages in the amount of $230,000 was well-grounded in the evidence of medical expenses and lost wages, with the court rejecting Mitchell's prayer for damages of three to four times that amount for pain and suffering and loss of enjoyment. *Cf. Mayer v. Small*, 1989 U.S. Dist. Lexis 12110 (N.D.Ill. Sept. 25, 1989) (considering facts indicating that damages award was excessive in determining to vacate default

---

**15.** We explained in *Clark* that even if a motion to vacate default judgment can qualify under the criteria of Super. Ct. Civ. R. 60(b), "the decision of whether to grant the motion is equitable in nature and other factors must be considered. Relevant are whether the movant: (1) received actual notice of the proceeding; (2) acted in good faith; (3) presented a prima facie adequate defense; and (4) acted promptly upon discovery of the judgment. Also considered is whether the non-moving party would be prejudiced by the setting aside of the judgment." *Clark*, 418 A.2d at 1043; *see also Mourning v. APOCA Std. Parking, Inc.*, 828 A.2d 165, 167 (D.C.2003); *Reid v. District of Columbia*, 634 A.2d 423, 424 (D.C.1993).

**16.** As to the potential defense that Mitchell sustained her injuries in a separate accident, the verified complaint states only that "[t]he damages complained of *may be* the result of action by a third party, over whom this Defendant had no control" (italics added)—a weak statement not sufficiently definite to make out a prima facie adequate defense. *See Venison v. Robinson*, 756 A.2d 906, 911–12 (D.C.2000) (holding that appellant's bold allegations, completely unsupported by any evidence, did not establish a prima facie defense that could entitle appellant to vacatur of default judgment).

judgment).[17]

We are satisfied that in exercising its discretion in ruling on Clemencia's motion to vacate the judgment, the trial court made a "conscientious judgment which [took] into account the law and the particular circumstances of the case," *Manos,* 62 A.2d at 792, and did not abuse its discretion. Accordingly, the judgment of the trial court is

*Affirmed.*

---

**17.** Finally, we agree with Mitchell that the trial court was not required to analyze all of the factors listed in *Clark, see* note 14 *supra,* once it determined that Clemencia failed to show that he qualified for relief under one of the prongs of Rule 60(b). *See Clark,* 418 A.2d at 1043 (considering factors only after determining that criteria for applying Rule 60(b)(6)(1) were satisfied).