M.M.

v.

T–M.M.,

**In re N.M.; M.M., Appellant.**

**Nos. 08–FM–1542, 08–FS–1543.**

District of Columbia Court of Appeals.

Submitted March 17, 2010.
Decided March 31, 2010.*

Lauren S. Kahn, appointed by the court, filed a brief for M.M.

A.R. Marblestein–Deare, guardian ad litem, filed a statement in lieu of brief.

Norman T. Robinson III, filed a statement in lieu of brief for appellee D.J.

Peter J. Nickles, Attorney General for the District of Columbia, and Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Stacy L. Anderson, Assistant Attorney General, filed a brief for the District of Columbia.

Before PRYOR, SCHWELB and KING, Senior Judges.

PER CURIAM:

M.M. appeals from an order denying his motion under Superior Court Domestic Relations Rule 60(b) for relief from an order of paternity and permanent child support. The motion was denied as untimely where it was filed more than twelve

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on March 31, 2010. The court has granted appellee's motion to publish.

years after the paternity judgment was entered even though M.M. had reason to believe he may not be the child's father but nonetheless voluntarily acknowledged paternity. We affirm.

M.M. began dating T–M.M., the daughter of a co-worker, in 1987. On September 9, 1988, T–M.M. gave birth to a daughter, N.M., and several days later told her mother that M.M. was the father. In 1990, T–M.M. told M.M. that she believed the child was his daughter, although she also told him there were two other men who could also have been the child's father. Between 1990 and 1994, N.M. had occasional weekend visits with M.M, who she believed was her father. These visits included overnight trips to his parents' home and spending up to a month with M.M. over the summer. N.M. also spent time with M.M.'s wife and two daughters.

In 1993, T–M.M. filed a petition to establish paternity and child support as part of her request to receive benefits from the District of Columbia. At an April 1993 hearing on the petition M.M. acknowledged that he was N.M.'s father. At that time he did not mention that there were two other men who could be the father and he did not request paternity testing. M.M. consented to a support order that required him to pay $62.50 biweekly in child support and to provide health insurance for N.M. M.M. was advised that he could seek review of the order within ten days, but he did not seek review.

By the time N.M. was seven years old, M.M. was no longer involved in her life. N.M.'s mother, T–M.M., passed away in October 1999, when the child was eleven years old. N.M. spent a couple of weeks with M.M. immediately after the funeral and was then placed in the care of her grandmother, D.J. In November of 2000, the District of Columbia filed a motion requesting an order to show cause why

M.M. had not maintained health insurance for N.M. The District also requested that D.J. be named in place of the deceased mother to receive child support payments from M.M. The contempt motion was continued for six months before being withdrawn in June of 2001. M.M. was ordered to continue paying support for N.M. and to make additional payments of $15.62 biweekly to make up his arrears. Around the same time, N.M. spent a week with M.M. and his family, at her request.

By March 2004, M.M. was in arrears again and the District brought another civil contempt motion, which was withdrawn after a hearing in May and subsequent order reaffirming the earlier support orders. In October of 2005, the District filed a petition alleging that N.M. had been neglected by D.J. and identifying M.M. as N.M.'s biological father. M.M. was given court-appointed counsel and requested paternity testing, which the court granted. In November of 2005, the test showed that M.M. was not the father of N.M.

M.M. filed a motion to vacate the child support order based on the conclusive DNA test showing he was not N.M.'s father. A hearing was held before Magistrate Judge Nooter on January 26, 2006. M.M. testified that he primarily acknowledged paternity based on his belief in what N.M.'s mother had told him. He also said that his request for paternity testing was denied by a "female judge" during the 1993 hearing, although the record showed the hearing was conducted by a male judge. In subsequent additional briefing, M.M. clarified that he was seeking to have the paternity and support orders vacated under Rule 60(b)(5) and (6) and to vitiate payment of the arrears.

The motion to vacate the order was denied on May 18, 2006. Magistrate Judge Nooter found there had been a voluntary

acknowledgment of paternity by M.M. in 1993 and did not find M.M. to be credible on the issue of being denied paternity testing at the time. He concluded that M.M. had not filed his Rule 60(b) motion within a reasonable time where he had waited twelve years even though the mother told him two other men could have been the father. Additionally, the court concluded the claim was barred by laches where the failure to bring that claim was contrary to the best interests of N.M. and the delay meant there was "virtually no chance" N.M.'s true father could be identified after her mother's death.

The judgment was affirmed by Associate Judge Saddler on November 6, 2008. The court found that M.M. remained N.M.'s legal father based on his voluntary acknowledgment of paternity. It also concluded that the significant delay in bringing the Rule 60(b) motion was unreasonable and against the equities of the case, especially in light of the death of the mother who could have provided leads to N.M.'s biological father. This appeal followed.

■ In the District of Columbia, a parent-child relationship may be established by a written acknowledgment of paternity and may be "challenged upon the same grounds and through the same procedures" as a final judgment. D.C.Code § 16–909(c) (2001). Final judgments may be challenged through a direct appeal or, after the time for appeal has expired, through a Rule 60 motion. Super. Ct. Dom. Rel. R. 60(b). The motion for relief under Rule 60 must be made within a "reasonable time." Super. Ct. Dom. Rel.

R. 60(b). We review the denial of a Rule 60(b) motion for an abuse of discretion where the trial court is "in the best position" to judge the circumstances and credibility of the evidence. *Clemencia v. Mitchell,* 956 A.2d 76, 79 (D.C.2008).

■ M.M. argues that the court abused its discretion in denying his motion because it is no longer equitable to require him to pay child support where it has been shown that he is not the child's biological father. In the trial court, M.M. relied, as he does here, on the provisions of Rule 60 that provide for relief where an order "is no longer equitable" and "any other reason justifying relief." [1] In determining if a motion is brought in a reasonable time under this rule, the circumstances of the case are of paramount importance. *Puckrein v. Jenkins,* 884 A.2d 46, 57–58 (D.C. 2005).

■ While M.M. argues before us that the motion should be deemed to be brought in a reasonable time based on the time elapsed between the paternity test and the motion, he does not address the reality that twelve years went by before he sought the paternity test. He admits that he voluntarily acknowledged paternity even though he knew there was a possibility that one of two other men could have been the father of N.M. By doing so, he assumed the role of N.M.'s legal father under District of Columbia law and, in fact, played some role in her life and was liable for her support for the majority of her childhood. Only several years after the death of N.M.'s mother when he had

1. M.M. argues before us that the DNA evidence presents new relevant information, but he did not bring a claim under Rule 60(b)(2) for relief due to newly discovered evidence. We note, however, that such a claim would be unavailing because the DNA evidence was not undiscoverable at the time of the 1993 paternity adjudication and also that such a claim

would be barred by the one-year limitation for filings under Rule 60(b)(1), (2), and (3). Additionally, he raises claims of due process in being denied an attorney at the 1993 hearing. However, as these claims were not raised in the courts below, they are not properly before us here.

fallen behind in support payments and was named in the neglect proceeding was the issue of his biological paternity raised.

On these facts, we cannot say the trial court abused its discretion when it found that he remained responsible for N.M.'s support in spite of the recent genetic testing that excluded him as her biological father. The order below found that the magistrate judge reasonably relied on the analysis in *W.F. v. K.J.*, to conclude that twelve years was beyond the scope of the reasonable time anticipated by Rule 60(b). 128 Daily Wash. L. Rptr. 1045, 1081, 1093 (May 11, 16, 17, 2000) (determining that the majority of Rule 60(b) motions deemed to be filed within a reasonable time were filed within one year of the date of judgment). Additionally, the court found that the equities were not in M.M.'s favor because his delay, during which time the mother died, disadvantaged N.M. and her caretakers by preventing them from identifying the true biological father.

· M.M. urges us to consider the matter by analogy to criminal cases where DNA evidence can be used to overturn a conviction. However, the circumstances here are not the same as those existing in a criminal conviction. Likewise, M.M. asks us to consider a Maryland case where the court held that arrears were not owed where a paternity test resulted in the paternity declaration being vacated by the court. *Walter v. Gunter*, 367 Md. 386, 788 A.2d 609 (2002). Here, the court has declined to vacate the paternity acknowledgment of M.M. because he failed to file an appeal or bring an appropriate Rule 60(b) motion within a reasonable time given the equities of the case. This places M.M. in a different position than the party in *Walter*, one that merits a different result where the court has concluded that M.M. created his own obstacle to equitable relief when he delayed any attempt to overturn the pater-

nity and support order for twelve years. Accordingly the judgment on appeal is

*Affirmed.*